Indiana State Symphony Society, Inc. *v.* Viktors Ziedonis

[No. 2-474A91. Filed November 17, 1976.]

*Stephen Goldsmith, Barnes, Hickam, Panzer & Boyd,* of Indianapolis, for appellant.

*John W. Tranberg,* of Indianapolis, for appellee.

White, J.—Plaintiff-appellee (Ziedonis), formerly employed by defendant-appellant (Symphony) as a violinist in the Indianapolis Symphony Orchestra, recovered a verdict and judgment of $6,335.00 as damages for his discharge in alleged violation of this written employment contract. Symphony's appeal charges error (1) in denying its motion for judgment on the evidence, (2) in a jury instruction, and (3) in the amount of damages.

We reverse on the issue of damages.

Ziedonis was discharged twice: First on March 30, 1967, effective at the end of the 1967-1968 season, and again on

April 15, 1967, effective immediately. He claims no right to recover for the first discharge which was effected in conformity with paragraph 4 of Symphony's "Master Agreement"[1] which he concedes permits such a delayed discharge for any reason or for no reason. The $6,335.00 he recovered was the amount (by his calculation) which he would have earned had he been permitted to work until that first discharge became effective.

The April 15th discharge was effected by a telegram reading:

"VIOLATION PARAGRAPH 42 OF MASTER AGREEMENT ON APRIL 13 AND 14 1967 NECESSITATES DISMISSAL IMMEDIATELY SERVICES NO LONGER REQUIRED WITH INDIANAPOLIS SYMPHONY ORCHESTRA".

The alleged violations of April 13 and 14, 1967, were Ziedonis' failures to appear on those dates for tour-concerts at Hutchinson, Kansas, and Ponca City, Oklahoma. Symphony contends these failures are violations of paragraph 24 of the Master Agreement which reads:

"It is agreed that the musicians will be present at all rehearsals and concerts unless excused in advance by the conductor, or illness or some condition beyond the musician's control, prevents his attendance."

The dismissal telegram cited paragraph 42 of the Master Agreement which reads:

"DISMISSAL OR DISCHARGE FOR CAUSE (42) Any Musician engaged under the provisions of this agreement may be dismissed for insubordination, insobriety, persistent inattention to his duties, after having been warned, or for violation of any provision of this agreement for which no other penalties are herein provided."

Symphony contends that the Master Agreement provides no penalty for violating paragraph 24, therefore, it reasons, any such violation justifies discharge pursuant to paragraph

---

1. The Master Agreement is incorporated into Ziedonis' individual employment contract by express reference.

42. Ziedonis contends that a penalty is provided by section 3 of his individual contract with Symphony which states that when "the Musician is absent from any regularly scheduled service, the amount he would have received, if present, may be deducted from his weekly salary", if the absence was not excused or caused by illness. He also contends that his Hutchinson absence was excused and his Ponca City attendance was prevented by a condition beyond his control, i.e., his inability to obtain air transportation. The evidence on these issues was conflicting. The same is true of testimony adduced by Symphony to the effect that Ziedonis was guilty of repeated absence, tardiness, insobriety, disruptive conduct, failure to follow instructions, and other failures, which were either denied or excused by the testimony of other witnesses.

The evidence most favorable to appellee Ziedonis is sufficient to sustain a verdict in his favor, if believed by the jury, hence there is no error in the overruling of Symphony's motion at the conclusion of all the evidence, for judgment on the evidence. *Mamula* v. *Ford Motor Co.* (1971), 150 Ind. App. 179, 275 N.E.2d 849; *Miller* v. *Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701.

Furthermore, all of Ziedonis' alleged misconduct, except his absences from the concerts at Hutchinson and Ponca City, is alleged to have occurred prior to his discharge by letter pursuant to the Master Contract's paragraph 41, which permitted him to continue working through the next season. He therefore contends that Symphony thereby waived its right to contend that his prior conduct merited immediate discharge, that such prior conduct cannot be looked to as support for the later immediate discharge by telegram.

Ziedonis also submitted a jury instruction given by the court as follows:

"The best criterion of the meaning of a contract is the construction which the parties themselves place on it, and ordinarily their interpretation is looked to by the Court in determining the meaning of the contract.

"Strict performance of the terms of the contract on the part of one party may be waived by the other, by acts which show a relinquishment of one or more provisions of the contract."

Symphony objected only to the second paragraph and only because "it is not relevant to the issues formed by the pleadings nor to the facts raised by the evidence." It was relevant to Symphony's attempts to justify the immediate discharge by evidence of misconduct prior to his April 13 and 14, 1967, tour absences. Much of that evidence related to rehearsals and concerts antedating the last renewal of his contract and all of it to times preceding the immediate discharge, which relied solely on those tour absences.

Symphony contends that the verdict is too large by at least $3,430, which is the amount Ziedonis testified in his own case-in-chief he was paid for playing with two out-of-town orchestras during the period for which the verdict awards him the full amount of his Symphony salary. Ziedonis counters with argument to the effect that Symphony has failed to sustain its burden of proving mitigation in that it has failed to prove that the $3,430 is profit and that, inasmuch as his Symphony employment was only part-time, Symphony has failed to prove that he could not have earned this income had he not been discharged.[2]

As to the last point, Symphony says that it is obvious that Ziedonis could not have played for those orchestras had he also been employed by Symphony. Since neither orchestra appears to have played in or near Indianapolis that proposition is irrefutable.

A majority of this court is of the opinion, for the reasons stated in Presiding Judge Buchanan's concurring opinion, that the entire $3,430 should have been deducted in mitiga-

---

2. *Fertilizer Co.* v. *Lillie* (1927), 18 F.2d 197, 200, 52 A.L.R. 552; *Albert Johann & Sons Co., Inc.* v. *Echols* (1968), 143 Ind. App. 122, 130, 238 N.E.2d 685.

tion of Ziedonis' damages. Therefore a remittitur will be ordered.

It is the writer's opinion, however, that the burden of *proving* mitigation, if any, rested on Symphony, and that it failed to prove that his earning this $3,430 actually reduced his loss. *Hinchcliffe* v. *Koontz* (1890), 121 Ind. 422, 426, 23 N.E. 271; *Hamilton* v. *Love* (1899), 152 Ind. 641, 643, 53 N.E. 181; *The Pennsylvania Co.* v. *Dolan* (1892), 6 Ind. App. 109, 124, 32 N.E. 802; *Milhollin* v. *Adams* (1917), 66 Ind. App. 376, 115 N.E. 803. It was Ziedonis' duty to use reasonable efforts to avoid loss by securing employment elsewhere[3] and, although it was not his burden to do so, he did prove that he had discharged that duty. The fact that in so doing he also proved that he earned a gross sum for out-of-town work in which he incurred expenses does not shift to him the burden of proving whether or not his earnings exceeded his expenses. Furthermore, the jurors were never instructed that sums earned in other employments were to be considered in assessing damages. They were merely told by the court's Instruction No. 8, the only instruction on the measure of damages, that it was Ziedonis' duty to mitigate his damages, "[t]hat is to say that it is his duty to make reasonable effort to obtain work elsewhere." Symphony made no objection or request relative to that omission.

Symphony also contends that the jury made other errors in computing the amount of the salary lost by Ziedonis. It contends that Ziedonis was not entitled under his contract to $435.00 for three weeks of employment lost in the summer of 1967 at $145.00 per week, and that his salary loss for the thirty-three weeks of the 1967-68 season was 10% less than his 1966-67 salary since paragraph 41 of the Master Agreement (under which Ziedonis concedes he was lawfully discharged effective at the end of the 1967-68 season) provides

---

3. *Inland Steel Co.* v. *Harris* (1911), 49 Ind. App. 157, 163, 95 N.E. 271.

that "the weekly salary of said following season shall not be less than the season during which the notice was given when said musician plays the same chair, and the salary shall not be reduced more than ten percent (10%) when said musician is demoted." However, we agree with Ziedonis that there is evidence that he would have had the three weeks summer employment but for the discharge and that there is no evidence that he would have been demoted during the 1967-68 season.

The judgment of the trial court overruling Symphony's motion to correct errors is reversed and the cause is remanded to the trial court with directions to grant a new trial on the sole issue of the amount of plaintiff's damages subject to a remittitur of $3,430 (i.e., if plaintiff remits $3,430, the court shall enter a new judgment in the sum of $2,905.00, and costs, plus interest thereon at the rate of eight percent per annum from the date of the verdict to date of entry of the new judgment; if plaintiff does not remit and there is a new trial, the new judgment shall be in the amount of the new verdict or finding plus interest thereon from the date of the original verdict to the date of judgment at the rate of eight percent per annum).

Reversed and Remanded with directions.

Buchanan, P.J., concurs with opinion, in which Hoffman, J. (participating by designation), joins.

## CONCURRING OPINION

BUCHANAN, P.J.—I concur in the result reached by the majority, but solely on the basis that once it was proved that Ziedonis had incurred mitigating damages, the burden was on him (not the Defendant) to prove that he also had expenses which otherwise would not have been incurred.

It has long been the rule in Indiana that one wrongfully discharged must attempt to seek alternate employment in order to mitigate damages.

. . . it is the duty of a person when unlawfully discharged to make reasonable effort to obtain work elsewhere, and that in no event can he recover more than his actual loss would have been had he made such reasonable effort to obtain employment . . . . *Inland Steel Co.* v. *Harris* (1911), 49 Ind. App. 157, 163, 95 N.E. 271, 273.

When a discharged employee obtains alternate employment there is no question that the proper measure of his damages is the amount of compensation agreed upon for the remainder of the contract period involved, less the amount which he earns from other employment. Thus, the jury should have reduced Ziedonis' award by Three Thousand Four Hundred and Thirty ($3,430.00) Dollars, the amount he earned in alternate employment.

The majority rightfully place the burden on the Defendant Symphony of showing that other employment was available to plaintiff or that the plaintiff did not use diligence in seeking other employment. This is the rule in Indiana. *Hinchcliffe* v. *Koontz* (1890), 121 Ind. 422, 426, 23 N.E. 271; *Hamilton* v. *Love* (1899), 152 Ind. 641, 643, 53 N.E. 181; *The Pennsylvania Co.* v. *Dolan* (1892), 6 Ind. App. 109, 124, 32 N.E. 802.

In this case it was unnecessary for the Symphony to carry this burden because Ziedonis testified that he had earned Three Thousand Four Hundred and Thirty ($3,430.00) Dollars in other employment during the remainder of the contract period. However, I am aware of no Indiana cases[1] which would require the Symphony to show that this employment was profitable to Ziedonis, i.e. because Ziedonis had certain expenses of an unspecified amount during the time he earned the Three Thousand Four Hundred and Thirty ($3,430.00) Dollars the Symphony has failed to show that such employment was profitable.

The defendant is in no position to know plaintiff's expenses and should not reasonably be saddled with the burden of

---

1. *Milhollin* v. *Adams* (1917), 66 Ind. App. 376, 115 N.E. 803, merely recognizes that allowance should be made for such expenses but does not place on the Defendant the burden of proof thereof.

proving them. As expenses are peculiarly within the cognizance of plaintiff, *he* should prove them. *Cf.* 22 A.L.R.3rd 1047, 1071; C. MCCORMICK, HANDBOOK ON THE LAW OF DAMAGES, §§ 58-60 (1935).

Presumably, something more than love of music led Ziedonis to seek employment with out-of-town symphony orchestras. He certainly had income from this employment. If he had expenses which reduced his income, he should have proved them.

NOTE.—Reported at 359 N.E.2d 253.