**PEPSI–COLA GENERAL BOTTLERS, INC., Defendant-Appellant,**

v.

**Kim Elaine WOODS, Plaintiff-Appellee.**

No. 1–482A95.

Court of Appeals of Indiana, First District.

Oct. 5, 1982.

Patrick A. Shoulders, Robert H. Brown, Kahn, Dees, Donovan & Kahn, Evansville, for defendant-appellant.

S. Anthony Long, Phillips & Long, P. C., Boonville, for plaintiff-appellee.

NEAL, Judge.

Defendant-appellant Pepsi-Cola General Bottlers, Inc. (Pepsi) appeals an adverse judgment for damages rendered in favor of plaintiff-appellee Kim Elaine Woods (Woods) by the Pike Circuit Court without the intervention of a jury.

We reverse.

### STATEMENT OF THE FACTS

The facts found specially by the court are as follows: On March 6, 1981, Woods was interviewed and hired by Pepsi as a route settlement clerk. At that time she held two jobs, one with Sears, Roebuck & Company, and the other with First Federal Savings and Loan. Pepsi advised her to terminate her prior employment and report to work on March 26. The notice of termination was so given by Woods. The contract of employment between Woods and Pepsi, as relevant here, was oral and was of indefi-

nite duration. It contained certain fringe benefits which she found desirable. During the employment interview with Mr. Bartel of Pepsi, Woods mentioned that her boy friend worked at Coca Cola, but Bartel did not believe that this disqualified her from working for Pepsi.

However, after Woods had given notice to her employers, and before she was to report to work for Pepsi, she was discharged by Pepsi because she would be privy to sensitive customer information, and suspicion would be focused upon her should there be a breach of security. At the time of her discharge, Woods had finished her employment at Sears and had a few days of work left at First Federal. The Pepsi personnel manager offered to have someone at Pepsi call First Federal and urge it to retain her. Woods did not avail herself of the offer because First Federal was already interviewing applicants for her position, this was the third time she had quit, and "I just didn't want to ask them for it back and plus I was really upset and disgusted with the job anyway."

Upon the expiration of the First Federal job, Woods after two weeks found a job at Ramada Inn serving food during "Happy Hour" and occasionally waiting table. The working conditions at Ramada were less than desirable, and the pay did not equal Pepsi's. Eventually, after 26 weeks at Ramada, she obtained a job at Osco Drugs which was comparable to that at Pepsi. She earned $2,200 at Ramada, and would have earned $3,000 at Pepsi. In Conclusions of Law 1, 2 and 3, the court stated:

"1. On March 6, 1979, the Plaintiff accepted the Defendant's offer of work, which offer was a permanent, full time position of indefinite duration. An at will employment agreement was thereby created between Plaintiff and Defendant and could be terminated unilaterally at any time by either party.

2. Moving ones [sic] household or relinquishment of existing job, business or profession, without more, will not impose the requirement of 'good cause' for discharge, 60 ACR [sic] 3d 218 Cited Ohio Table Pad Co. of Indiana v. Hogan No. 3–180 Ind.App. 3rd dist July 30, 1981. [sic] but is sufficient consideration for moving expenses.

3. Defendant is responsible for Plaintiff's loss of employment damages subject to the right of Defendant to have Plaintiff mitigate said damages."

Thereupon the trial court entered judgment for $2,100.

## ISSUES

Pepsi raises two issues:

I. Whether the trial court erred in awarding damages for breach of an employment contract where the evidence showed and the court found that an at will employment contract was created and could be terminated by either party; and

II. Whether damages of $2,100 were excessive where the court found that Woods earned only $800 less than the amount she would have earned had Pepsi not discharged her.

## DISCUSSION AND DECISION

The principal line of attack pursued by Pepsi is that no liability can be imposed on it for the discharge of Woods who was employed only at will. In Indiana the general rule governing both oral and written employment contracts is well settled. If the tenure of service cannot be determined from the terms of the contract, such contract is one at will, and may be terminated at any time at the election of either party. *Campbell v. Eli Lilly and Company,* (1980) Ind.App., 413 N.E.2d 1054 (trans. denied); *Martin v. Platt,* (1979) Ind.App., 386 N.E.2d 1026; *Shaw v. S. S. Kresge Company,* (1975) 167 Ind.App. 1, 328 N.E.2d 775; *see Frampton v. Central Indiana Gas Company,* (1973) 260 Ind. 249, 297 N.E.2d 425; *see also Montgomery Ward & Co., Inc. v. Guignet,* (1942) 112 Ind.App. 661, 45 N.E.2d 337. However, exceptions exist where the employee is discharged solely for exercising a right conferred on him by a statute, constitution, or other positive law. *Campbell, supra; Martin, supra; Frampton, supra.*

Pepsi relies heavily upon *Ohio Table Pad Co. of Indiana, Inc. v. Hogan,* (1981) Ind. App., 424 N.E.2d 144 (trans. denied). There Hogan, who resided in Fort Wayne and was employed by that city, interviewed with Ohio Table for a job in LaGrange. She told Ohio Table that she was looking for a job "that would last me until I was ready to retire," and that she expected to work until she reached 62 years of age. She was told that if she accepted the job, she would be expected to move to La-Grange, the company paying her travelling expenses until she moved and also her moving expenses. She moved and went to work in 1973, and was discharged in 1976. She commenced a suit for breach of a contract of permanent or lifetime employment, and a jury awarded her $57,000. The court held that since Hogan was not obligated to work until age 62, the contract of employment was one for an indefinite term. The court in an extensive analysis said that such a contract of employment was terminable at the will of either party unless supported by independent consideration, in which event the company could terminate it only for cause without incurring liability. The court further said that the trial court erred in instructing the jury that giving up another job or moving to another place would be sufficient independent consideration. Such, held the court, does not constitute sufficient independent consideration to support a contract of permanent employment so as to require good cause for terminating an employee. The court concluded by stating that the evidence created only a contract of employment terminable at the will of either party. Finally the court held that the act of moving would constitute sufficient consideration for the agreement by Ohio Table to pay moving expenses.

The court concluded:

"(1) The acts and actions involved in moving one's household to a new location, while sufficient to constitute consideration for an agreement to provide moving allowances or expenses, will not constitute independent consideration to support a contract of permanent employment so as to impose the requirement of good cause upon the right to terminate the employee.

(2) The relinquishment by the employee of an existing job, business, or profession, without more, will not impose such requirement."

Woods counters Pepsi's argument by the assertion of the doctrine of promissory estoppel which is set forth in the Restatement of Contracts, § 90, as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Section 90 was recited and applied in the case of *Lyon Metal Products, Incorporated v. Hagerman Construction Corporation,* (1979) Ind.App., 391 N.E.2d 1152. There Hagerman, a general contractor in the process of bidding a school project, accepted a bid by Lyon to furnish it lockers. Hagerman used that figure in computing its bid. Hagerman was successful, but thereafter Lyon withdrew its bid. The court applied the doctrine of promissory estoppel under § 90, and held Lyon liable to Hagerman. Promissory estoppel is not a new concept. Forbearance, detriment, or loss incurred in reliance upon the promise of another has long been considered sufficient consideration to support a contract. *See generally Urbanational Developers, Inc. v. Shamrock Engineering, Inc.,* (1978) Ind.App., 372 N.E.2d 742; Corbin on Contracts (One Volume Ed. 1952), § 200; 6 I.L.E. *Contracts* § 31.

Pepsi directs our attention to the *Lyon* court's discussion of the purpose of promissory estoppel:

"The very purpose of section 90 is to make a promise binding even though there was no consideration 'in the sense of something that is bargained for and given in exchange.' (See 1 Corbin, Contracts § 634 et seq.)"

*Id.,* 391 N.E.2d at 1115, quoting *Drennan v. Star Paving Co.,* (1958) 51 Cal.2d 409, 333

P.2d 757. Pepsi asserts that by applying the doctrine of promissory estoppel to the facts of this case the court would not be enforcing a promise lacking consideration. It would be creating a promise that was never contemplated by either party, that is, that the employment relation would be entered for something other than an indefinite period of time.

■ A term employment contract is enforceable, and the measure of damages for breach, generally, is the contract price for the unexpired term less what the employee has earned, or by reasonable diligence in mitigation of damages could have earned in other employment since the discharge. *Rochester Capital Leasing Corporation v. McCracken,* (1973) 156 Ind.App. 128, 295 N.E.2d 375; 12 I.L.E. *Employment* § 16; *see Indiana State Symphony Society, Inc. v. Ziedonis,* (1976) 171 Ind.App. 292, 359 N.E.2d 253. An executory indefinite employment contract is not enforceable, and is terminable at the will of either party. It is fundamental contract law that a contract is unenforceable if it is so indefinite and vague that the material provisions cannot be ascertained. *See Inman's Incorporated v. City of Greenfield,* (1980) Ind.App., 412 N.E.2d 126; *Marshall v. Ahrendt,* (1975) 165 Ind.App. 359, 332 N.E.2d 223. This court cannot make a contract for the parties, *Jenkins v. King,* (1946) 224 Ind. 164, 65 N.E.2d 121, nor are we at liberty to revise a contract, or supply omitted terms while professing to construe it. *Gaw v. LaPorte Corporation,* (1956) 126 Ind.App. 143, 130 N.E.2d 790; *see Workman v. Douglas,* (1981) Ind.App., 419 N.E.2d 1340; *see also,* 17A C.J.S. *Contracts* § 296(3). An employment contract is no different. If the tenure is indefinite, the contract is unenforceable to the extent that it remains executory.

■ We have no difficulty in finding that Woods has a right of action under promissory estoppel; clearly Woods quit her former employment in reliance upon a promise of employment with Pepsi. However, we perceive the problem here to be the measure of recovery. Under the promissory estoppel theory as stated in § 90 of the Restatement of Contracts, the *promise* which induces action is binding if injustice can be avoided only by *enforcing the promise.* The promise which Woods seeks to enforce is an employment contract of indefinite tenure which is unenforceable for vagueness. The only thing, under the law, that Pepsi promised was that Woods could work for Pepsi until either party decided to terminate their relationship. Such a promise is distinguishable from that in *Lyons, supra,* (a bid to supply lockers for a construction project) which clearly fixed the amount of materials to be provided. In the case at bar we have no way to determine the amount of wages to which Woods was entitled, since under the circumstances Pepsi could have discharged her after a single day's work without incurring liability. The trial court seems to have enforced the contract with Pepsi for twenty-six weeks, and computed damages in findings 12 and 13 as if there were a term contract for that period. Apparently, the court deducted what Woods actually earned at Ramada from what she might have earned at Pepsi during the same period. In effect the court created a term not existing in the agreement between the parties, that is, a guarantee of twenty-six weeks of employment, and awarded Woods damages for the loss of her bargain.

Promissory estoppel would have entitled Woods to damages for expenses incurred in reliance on Pepsi's promise. However, there was not sufficient proof of out-of-pocket expenses. Woods did not testify to any moving or job-hunting expenses from which damages could be computed. She argues, citing *Indiana Tri-City Plaza Bowl, Inc. v. Estate of Glueck,* (1981) Ind.App., 422 N.E.2d 670, that mathematical certainty is not required to compute damages. This is true, but there must be some evidence of damages in contract actions, even if damages must be estimated as in *Indiana Tri-City, supra.* Woods also argues that her experience at Ramada, working in a barroom frequented by vulgar and drunken clientele, was unpleasant and should be compensable. She presents no authority or even cogent argument explaining why this

would be an element of damages in an action sounding in contract. We know of none.

For the reasons given above we reverse the judgment of the trial court and order that judgment be entered in favor of Pepsi.

Reversed.

ROBERTSON, J., and YOUNG, P. J. (participating by designation) concur.