DEPARTMENT OF NATURAL RE-
SOURCES, State of Indiana,
Appellant (Defendant Below),

v.

Sherry EVANS, Appellee
(Plaintiff Below).

No. 4–1283 A 433.

Court of Appeals of Indiana,
Fourth District.

June 19, 1986.

Linley E. Pearson, Atty. Gen., Mark J. Tidd, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellant.

Ralph Ogden, M. Anne Wilcox, Wilcox & Ogden, Golden, Colo., for appellee.

MILLER, Judge.

In a federal lawsuit, Evans sued the Department of Natural Resources and the Republican State Committee attacking the "Two Percent Club" which conditioned state employment upon payment of two percent of each employee's salary to the Republican Party. The case was settled and the Department agreed not to retaliate against Evans for her participation in the federal lawsuit. Shortly thereafter, Evans applied for a job with the Department. Although Evans was qualified, she was not hired and the evidence indicated she was denied employment in retaliation for the federal lawsuit. At trial, Evans obtained an award of $8,144.00 for lost wages and $50,000 for invasion of "First and Fourteenth Amendment rights to contract." We affirm the award of lost wages and reverse the award of $50,000 which appears to be punitive damages. Additionally, we find the trial court improperly assessed costs against the state.

Affirmed in part, reversed in part.

## FACTS

Sherry Evans was one of seven plaintiffs who filed a lawsuit in United States District Court in 1976 against several state agencies, including the Department of Natural Resources (Department), the Republican State Committee (Committee), and sev-

eral of its officials. Evans alleged that the defendants were illegally conditioning state employment upon the payment of two percent of each employee's salary to the Republican party. The case became widely known as the "Two Percent Club Suit". While the suit was pending, Congress passed the Roush Act, 18 U.S.C. Section 601, which criminalized such conduct.

Settlement negotiations resulted in a release agreement dated January 12, 1979 between the state defendants and the seven plaintiffs. The Republican Party and its officers were not parties to the agreement. The release clause stated the defendants agreed not to retaliate against the plaintiffs because of their actions in the Two Percent Club Suit.

In February, 1979 Evans applied for a job with the Department as a laborer. She was not hired in March, 1979 because she failed to receive political clearance from the Republican State Committee which the Department required. Evans then filed this suit against the Department, alleging it refused to hire her solely because of her participation in the earlier lawsuit, thereby breaching the non-retaliation clause of the settlement agreement.

The case was tried August 16–18, 1983. The trial court concluded the Department had breached the non-retaliation clause of the settlement agreement and awarded Evans lost wages in the amount of $8,144.00, and $50,000.00 for invasion of her First and Fourteenth Amendment right to contract.

The trial court made the following findings of fact and conclusions of law:

"In this case, Sherry Evans (Evans) sues the Department of Natural Resources (Department) for breach of contract.

Evans was a vocal, outspoken, high-media profile plaintiff in a suit against the Department, the Republican Central Committee, and others challenging the unlawful conditioning of State employment upon kicking back of 2% of State salary to the Republican party. The suit, known as the 'Two Percent Club Suit,' and its attendant publicity caused great financial and public perception damage to the Republican party.

On January 12, 1979, Evans and the Department negotiated a settlement of the 'Two Percent Club Suit.' The Repulican [sic] Party Central Committee paid $4,600.00 to settle the suit. The settlement was based upon a release agreement drafted by James Hughes, attorney for the Repulican [sic] Central Committee. The release agreement contained a non-retaliation clause drafted by attorney Ron Ellberger for Evans. The non-retaliation clause is the contract sued upon by Evans. It states:

'The current state defendants agreed not to retaliate directly or indirectly, against any of the individual plaintiffs, or the ISEA because of the filing, prosecution, and settlement of this litigation.'

It is without question that the Department was a state defendant in the 'Two Percent Club Suit' settled with Republican Central Committee money.

On January 19, 1979, the dismissal of the 'Two Percent Club Suit' was approved by the Court.

On February 5, 1979, Evans applied for a position of laborer IV at the Salamonie Reservoir. The application was submitted to Neil Case, manager of the Salamonie Reservoir. There were no other applicants for the job. Evans had political clearance and a recommendation for Mr. Case specifically requesting that Evans be hired because she had previously worked with Mr. Case which was satisfactory and she had completed her degree at Ball State University. Mr. Case, an employee of the Department testified that he was informed by Jack Neal of the personnel department of the Department that Evans' application had been rejected because 'Evans was trouble or a trouble maker.' At this time the situation at the Department had deteriorated to such an extent that Mr. Case had to save all records he had in anticipation of problems and to protect himself from Indianapolis. This was the only denial of

political clearance Mr. Case had ever seen in fifteen years of service to the Department.

The Court finds that at this time in 1979 the personnel division of the Department had to get clearance from the Republican Central Committee before any patronage employee could be hired. The Court further finds that Evans was a patronage employee. The Court further finds that if there were no political clearance, no job could be obtained. The Court further finds that the approval of the Republican Central Committee was based on an oral policy from the Department to the Republican Central Committee. The Court further finds that the Department only acted after receiving political clearance from the Republican Central Committee. The Court further finds that throughout January and February 1979, the Republican Central Committee and the Department knew that if clearance was not given by the Republican Central Committee, an applicant would not be hired. The Court further finds that the Republican Central Committee maintained an extensive dossier on Evans and that the Republican Central Committee had the absolute right by Department policy to give or deny employment for political patronage jobs in the state.

Because the Department abdicated its responsibility to hire qualified state workers and gave to the Republican Central Committee approval of political clearance, the Court finds the Department made the Republican Central Committee and its employees the agent of the Department—a non-elected shadow agent.

The Court finds the incredibly evasive testimony of the then Republican Chairman, Bruce Melchert that he did not know a person could not obtain a job without political clearance should be given no weight.

The Court finds that it was just this type of shadow agent government retaliation and evasion that Evans sought to protect herself against when she and her

attorney negotiated the non-retaliation clause sued upon.

In less than one month after the Department and Evans obtained approval from the Court, the protection of the non-retaliation clause failed by the direct act of the agent of the Department in failing to grant political clearance to Evans.

No clearance—no job.

The Court finds that when all credible evidence in this case is considered, it unerringly indicates that Bruce Melchert specifically denied Evans' political clearance because of and in retaliation against Evans' prosecution of the 'Two Percent Club Suit.'

Even today, without political clearance from the Republican Central Committee a person cannot be hired at the Department for a patronage job no matter how skilled. Evans compares this system to the entrenched Cook County, Illinois machine.

It is not the purpose of these findings to change the patronage system—that is a matter for the voters, our legislators and the various political parties.

The purpose of these findings is to send a message of unquestioned clarity that if you settle a law suit and then immediately and directly violate the terms of the settlement your behavior breaks the contract settlement and attacks the integrity of the Court and the system which must approve the settlement. The party breaking the contract is responsible for all foreseeable loss especially as in this case when the Department through its agent broke the contract in less than a month.

The Court finds Evans clearly mitigated any loss she might have had. The Court finds that Evans lost wages in the amount of $8,144.00. The Court finds that Evans contends she is entitled to prejudgment interest in the amount of $3,523.00.

The Court finds that the Department broke the settlement contract through the acts of its agent, the Republican Cen-

tral Committee foreseeably invading Evans' First and Fourteenth Amendment rights to contract with damage in the amount of $50,000.00.

The nature of relief set out in this Findings of Fact, Conclusions of Law, Opinion, Judgment and Order of the Court has been specifically tailored to fit the nature and extent of the violation of the contract found in this case. This judgment goes no further. The taxpayers and people of the State of Indiana should have a right of action against the Republican Party Central Committee for the loss caused by the behavior of the Republican Party Central Committee in February 1979 in breaking the contract and attacking the integrity of the Court approved settlement.

The Republican Central Committee paid to settle the first law suit. The Republican Central Committee certainly should pay for the loss they caused here. It would be unconsionable to require the taxpayers to pay this loss.

In making this Opinion, the Court has specifically and personally observed the witnesses as they have testified and listened to their testimony and considered the witnesses intelligence, their opportunities to observe things they testified about, their memories, any motive the witness may have had for testifying in a certain way, the manner of the witnesses while testifying and whether the testimony of certain witnesses is consistent with other evidence believed by the Court. The Court has weighed the testimony of the witnesses under those conditions and found these facts specifically based upon that testimony."

## ISSUES

The Department appeals contending the trial court erred:

1. In finding the Department's failure to hire Evans was "retaliation" within the meaning of settlement contract for her participation in the two percent club suit;

2. In finding the Department had breached the settlement agreement by ab-

dicating its hiring responsibilities to the Republican State Committee;

3. In awarding Evans lost wages because she had applied for an at-will position;

4. In awarding Evans damages for invasion of her First and Fourteenth Amendment rights to contract, and

5. In awarding costs against the Department.

## DECISION

We note that this case was filed and tried as a breach of contract action. Evans claims only those rights acquired through her settlement contract arising out of the Two Percent Club Suit.

*Issue One: Retaliation Includes Failure to Hire*

■ The State initially argues the trial court's finding that the State retaliated against Evans was contrary to law. In cases tried to the court, we will not set aside the findings or judgment of the trial court unless such findings and judgment are clearly erroneous, and due regard shall be given to the trial court's opportunity to judge the credibility of witnesses. Ind. Rules of Procedure, Trial Rule 52(A). We shall look solely to the evidence most favorable to the judgment, together with all reasonable inferences drawn therefrom. Only if this evidence is without conflict and unerringly leads to a different conclusion than the one reached by the trial will be reverse the decision as being contrary to law. *Litzelswope v. Mitchell* (1983), Ind. App., 451 N.E.2d 366.

The State argues that retaliation does not extend to future hirings and that since Evans status at the time of the Two Percent Club Suit was that of former employee, retaliation must be limited to that context and does not include the decision to deny her political clearance or a job in the future based upon the Two Percent Club Suit. The trial court, however, disagreed with this contention and specifically found:

"It was just this type of shadow agent government retaliation and evasion that Evans sought to protect herself against when she and her attorney negotiated the non-retaliation clause sued upon.

In less than one month after the Department and Evans obtained approval from the court, the protection of the non-retaliation clause failed by the direct act of the agent of the Department in failing to grant political clearance to Evans."

We agree with the trial court's conclusion that failure to hire was the sort of action protected by the settlement agreement.

When the release agreement was signed, Evans and the other six plaintiffs were in different circumstances. Some parties were employees of the Department, some parties were former Department employees. Certainly, if the Department had fired any of its current employees who were parties to the litigation in retaliation for their participation in the Two Percent Club Suit, the Department would have violated the settlement agreement and the current employees would have had a cause of action for breach of the settlement contract. Here, the party was not a current employee but rather a job applicant. Evans was qualified, met the educational requirements for the job, and had not only the recommendation of others but also proven ability to work with the prospective supervisor. The trial court found the sole reason Evans was not hired was in retaliation for the exercise of her statutory right to sue and obtain judgment against the Department in the Two Percent Club Suit. We find the fact that hiring was at issue, not firing, is not determinative in this case.

The trial court concluded that the word "retaliate" in the settlement contract includes the Department's failure to hire Evans because of her participation in the Two Percent Club Suit. We agree. The trial court's decision comports with the dictionary definition of "retaliate"; to repay a wrong or injury with the like. Webster's Third New International Dictionary, 1976. As used in the settlement contract, a plain and reasonable meaning of the term "retal-iation" includes reprisals taken against Evans because of her participation in the Two Percent Club Suit. It would be unreasonable to conclude that future withholding of political clearance needed for state employment, and denial of employment based solely on lack of political clearance, was not included in the term "retaliate" as used in the settlement contract.

In *Frampton v. Central Indiana Gas Company* (1973), 260 Ind. 249, 297 N.E.2d 425, where an employee was fired from the Gas Company solely because she had filed a worker's compensation claim, our supreme court held it was illegal for an employer to "retaliate" against an employee because the employee had filed a worker's compensation claim. The *Frampton* court noted that employees must be free to file these claims "without being subject to reprisal." We agree.

The State's second argument on this issue is that even if retaliation does extend to future hirings, Evans was not treated any differently than any other applicant for political clearance. The State argues the patronage system was in place at the time of the settlement contract; Evans was aware of the system and realized she would have to go through the clearance process; and that Evans failed to pass political muster because she voted Democratic in the 1972 and 1974 primaries. The State claims Evans was denied political clearance based on her voting record.

The trial court specifically found to the contrary:

"The court finds that when all credible evidence in this case is considered, it unerringly indicates that Bruce *Melchert specifically denied Evans political clearance because of and in retaliation against Evans prosecution of the Two Percent Club Suit.*"

Record. p. 221 (emphasis added).

The evidence supports the trial court finding. Evans was cleared and hired for a full-time seasonal job in 1973 and 1974 after voting Democratic in the 1972 and 1974 primaries, and later was denied clearance

and employment in 1975 and 1979. The evidence also shows Evans was the most vocal of the two percent plaintiffs; the Republican Party did not consider her a "good" candidate in part because she had sued and publicly criticized the Party; that she was well known to the Republican state chairman and his staff; that Evans political clearance card was selected for special treatment out of several thousand received at the same time; that most clearance applications were routinely approved by a clerk; that the Department maintained an extensive dossier on Evans; and that Evans was considered a "trouble maker" by both the Party and the Department.

We are unpersuaded by the Department's argument and view it as an invitation to reweigh the evidence. While it is true that the settlement contract had no affect on the patronage system as a whole, it clearly affected the patronage rights of the parties to the settlement contract. The Department may be free to deny patronage employment to many based on political reasons, including filing suit against the party in power, but it has bargained away its rights to do so to Sherry Evans based upon the Two Percent Club litigation. We cannot say the trial court's finding that Evans was denied political clearance because of her role in the Two Percent Club litigation was contrary to law.

*Issue Two: The Republican State Committee as Agent of the Department*

■ The Department argues the trial court judgment for breach of contract was contrary to law because the trial court erroneously found the Republican State Committee to be the agent of the State. First, the Department argues that no issue of agency was raised by the pleadings, and second, that as a matter of law the evidence does not support a finding of any agency relationship.

We agree that the complaint does not specifically raise the issue of agency, but conclude the trial court's judgment was not based upon a finding of agency. The trial court judgment was based upon the actions of the Department itself, not the Republican Party.

The Department has the power and authority to hire its employees. The Department established a rule that political clearance was a prerequisite to patronage employment, and delegated to the Republican Party the ability to grant or deny clearance on its behalf. The Republican State Committee was not a party to the settlement contract and was free to deny clearance to any person for any reason including participation in the Two Percent Club litigation. The Department, however, *was a party* to the settlement contract and was not free to retaliate against Evans, having bargained away this right when settling the lawsuit.

The trial court in its conclusions of law stated:

"In this case, on the findings above, the Department broke the settlement contract with Evans by retaliating against her because Evans had sued the Department ..."

This indicates the court based its judgment on the acts of the Department in refusing to hire Evans rather than on the acts of the Republican State Committee in refusing to grant Evans political clearance.

*Issue Three: Damages for Lost Wages*

■ The trial court found the Department had breached its promise not to retaliate against Evans for her participation in the Two Percent Club Suit, and awarded $8,144.00 for lost wages for the period between the date of retaliation and the date on which Evans found comparable employment. The Department argues this was error because Evans was applying for an at-will position. Evans does not dispute that the laborer position she applied for is normally an at-will position, but argues that she is entitled to lost wages because of the Department's breach of the settlement contract.

Indiana continues to adhere to the traditional doctrine of employment at-will with only one exception, "where the employee is discharged solely for exercising a right conferred on him by statute, constitution or

other positive law."[1] *Pepsi-Cola General Bottlers, Inc. v. Woods* (1982), Ind.App., 440 N.E.2d 696; *See also Frampton v. Central Indiana Gas Company* (1973), 260 Ind. 249, 297 N.E.2d 425. Under ordinary circumstances, an employee at-will may quit or be discharged without cause. This court recently addressed the issue of damages for violation of an at-will employment contract in *Pepsi-Cola General Bottlers, Inc. v. Woods* (1982), Ind.App., 440 N.E.2d 696. The *Pepsi-Cola* court held that the measure of recovery for breach of an at-will employment contract was too speculative and uncertain to afford any ascertainable recovery. The court noted:

> "An executory indefinite employment contract is not enforceable, and is terminable at the will of either party. It is fundamental contract law that a contract is unenforceable if it is so indefinite and vague that the material provisions cannot be ascertained. This court cannot make a contract for the parties nor are we at liberty to revise a contract or supply omitted terms while professing to construe it. An employment contract is no different. If the tenure is indefinite, the contract is unenforceable to the extent that it remains executory.... In the case at bar, we have no way to determine the amount of damages to which Woods was entitled, since under the circumstances Pepsi could have discharged her after a single days work without incurring liability."

440 N.E.2d at 699.

The general rule that damages are too speculative and uncertain to afford recovery for breach of an at-will employment contract[2], however, does not apply to Ev-

ans. Here, unlike *Pepsi-Cola*, Evans is not attempting to enforce an at-will employment contract, but rather the non-retaliation clause of a settlement contract. Evans would not have been a true at-will employee if hired by the Department. Had she been hired, her employment would have been conditioned by the settlement contract, precluding the Department from taking retaliatory action against Evans. If hired, the Department could have discharged Evans at any time without liability *only if* the Department did not violate the settlement contract in doing so. Thus, the rational in the *Pepsi-Cola* case—"that a contract is unenforceable if it is so indefinite and vague that the material provisions cannot be ascertained"—is not applicable here where there existed a specific agreement not to retaliate for a specific cause. 440 N.E.2d at 699.

The measure of damages for a term employment contract is well-settled. A term employment contract is enforceable, and the measure of damages for breach, generally, is the contract price for the unexpired term less what the employee has earned, or by reasonable diligence in mitigation of damages could have earned, in other employment since the discharge. *Salem Community School Corp. v. Richman* (1980), Ind.App., 406 N.E.2d 269, at 275; *Indiana State Symphony Society, Inc. v. Ziedonis* (1976), 171 Ind.App. 292, 359 N.E.2d 253; *SECO Chemicals v. Stewart* (1976), 169 Ind.App. 624, 349 N.E.2d 733.

While this is not, strictly speaking, a term employment contract, the trial court judge apparently applied term contract damage principles and measured Evans lost wages for the period between the date

---

1. The Indiana court has refused to recognize further exceptions to the employment at-will doctrine based on promissory estoppel, see *Pepsi-Cola General Bottlers, Inc. v. Woods* (1982), Ind.App., 440 N.E.2d 696, or based on general public policy, see *Campbell v. Eli Lilly & Company* (1980), Ind.App., 413 N.E.2d 1054.

2. The *Frampton* court created an exception to the at-will employment doctrine by providing a cause of action for discharge from an at-will position in retaliation for the employee's exer-

cise of a statutory or constitutional right. In *Frampton*, our supreme court stated that the plaintiff, whose cause of action came within the exception to the at-will employment doctrine, was "entitled to be fully compensated in damages." 297 N.E.2d at 428. Because the case was before the supreme court on appeal from a grant of a motion to dismiss for failure to state a claim, however, the court did not discuss the measure of damages to be awarded an unlawfully discharged at-will employee.

of retaliation and the date on which Evans found comparable employment, specifically finding Evans had mitigated her damages and suffered an actual wage loss of $8,144.00. Unless based on insufficient evidence or contrary to law, computation of damages is a matter within the trial court's sound discretion. *Smith v. Glesing* (1969), 145 Ind.App. 11, 248 N.E.2d 366.

On appeal, the Department, while arguing that Evans is entitled to no recovery of damages whatsoever, does not challenge the trial court's findings regarding the amount of lost wages. Because we believe that Evans is entitled to be fully compensated under the terms of the non-retaliation clause, and because the Department does not challenge the amount of damages awarded by the trial court for the Department's breach of its contractual agreement, we affirm the trial court's award of $8,144.00 for lost wages.

*Issue Four: Damages for Violation of First and Fourteenth Amendment Rights*

■ The trial court made the following finding:

> "The court finds that the Department broke the settlement contract through the acts of its agent, the Republican Central Committee, foreseeably invading Evans' First and Fourteenth Amendment rights to contract with damages in the amount of $50,000.00."

The Department argues that a First or Fourteenth Amendment right to contract does not exist and that the trial court was in error. Evans readily concedes that no such right exists, but argues that the record as a whole and specifically the trial court's findings of fact indicate a breach of other First Amendment rights and the $50,000.00 award should be sustained on that basis. We find the trial court's award of damages for impairment of Evans' First and Fourteenth Amendment rights to contract is contrary to law.

■ This case was tried as a breach of contract action. In her complaint, Evans claims only damages arising from the Department's breach of the non-retaliation clause in the settlement contract. State interference with First Amendment rights would rise to the level of a constitutional tort. Such a claim must be litigated within the guidelines of the Indiana Tort Claims Act. IND.CODE 34-4-16.5-1 *et seq.* Evans made no claim under the Indiana Tort Claims Act. The trial court made no specific mention of damage to other First Amendment rights, and we are unable to find any support for such claim in the trial court's findings. The award of $50,000 appears to be an impermissible assessment of punitive damages against the State of Indiana. *State v. Denny* (1980), 273 Ind. 556, 406 N.E.2d 240, 242; *State Department of Natural Resources v. Taylor* (1981), Ind.App., 419 N.E.2d 819. Under the common law, an award of punitive damages against the state was questionable. The common law has been superseded by IND.CODE 34-4-16.5-4 which states in part: "a governmental entity is not liable for punitive damages." The Indiana Supreme Court noted, in *State v. Denny*, that this provision is part of the Indiana Tort Claims Act but:

> "Nonetheless, the concept of the State not having a state of mind or not being deterred by punitive damages should be the basis for the prohibition of such punitive damages in all cases applicable to the State. Such Act, should be considered as a statement of public policy by the legislature that the State is not to be considered as being liable for punitive damages...."

406 N.E.2d at 242.

The award of $50,000.00 for damage to First Amendment rights to contract must be reversed.

*Issue Five: Costs Awarded Against the State*

■ The State argues that the costs of this action were erroneously awarded against the State of Indiana. Indiana case law establishes that public policy is opposed to imposing costs on the State of Indiana. *State v. Ziliak* (1984), Ind.App., 464 N.E.2d 929. Taxing costs against the State of Indiana without specific statutory

authority is contrary to law. *State Department of Revenue v. American Motorists Insurance Company* (1979), 182 Ind. App. 645, 396 N.E.2d 907. Consequently, we reverse the trial court's imposition of costs against the State.

In conclusion, we hold the evidence supports the trial court's finding that the State breached the non-retaliation agreement and the trial court's award of damages for lost wages. However, the trial court's award for damage to a First Amendment right to contract cannot be sustained. Finally, the trial court's award of costs against the State is erroneous and must be reversed.

Affirmed in part, reversed in part.

YOUNG, P.J., and CONOVER, J., concur.