**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jun 11 2012, 9:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOSEPH BANASIAK**
Highland, Indiana

ATTORNEYS FOR APPELLEE:

**EMILY C. GUENIN-HODSON**
**MARK C. GUENIN**
Guenin Law Office, P.C.
Wabash, Indiana

**KEVIN W. MARSHALL**
Hobart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RON WEATHERS, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | No. 45A03-1109-CT-405 |
| ) | |
| JESSICA TURLEY, ) | |
| ) | |
| Appellee. ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Gerald N. Svetanoff, Judge
Cause No. 45D04-0902-CT-31

**June 11, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

## STATEMENT OF THE CASE

Ron Weathers appeals the judgment on the jury verdict in favor of Jessica Turley.

We affirm in part, reverse in part, and remand with instructions.

## ISSUES

1.  Whether the trial court abused its discretion in denying Weathers's motions for a continuance.

2.  Whether the trial court abused its discretion in excluding evidence.

3.  Whether the trial court properly instructed the jury.

4.  Whether the jury award was excessive.

## FACTS

Turley worked for Weathers for approximately three or four months in 2002, selling an engine-oil additive called X52, a product in which Weathers had invested and sold through his company, X52 Distributing, Inc.

Subsequently, Weathers met Dexter Hawk, the president of Hammond Lubricant Works, Inc. and International Petroleum Company. Weathers began purchasing oil from Hawk, who blended the oil with the additive at his facility in Hammond. Hawk did not have an ownership interest in X52 Distributing, Inc.

In May of 2007, Weathers again hired Turley to sell X52. At the time, Turley was living in Arizona and unemployed. Weathers and Hawk told Turley that she would earn "[a] thousand a week plus commission" as a sales representative. (Tr. 81).

2

In June of 2007, Hawk arranged for Turley to visit Hammond to learn more about X52. During her visit, Turley toured the manufacturing facility and met with another sales representative, with whom she went on a sales call. During the visit, Turley stayed at Hawk's home. Hawk made sexual overtures toward Turley, which she rejected.

Before she returned to her home in Arizona, Hawk gave Turley $1,500.00. He subsequently wired $500.00 per week for three weeks to Turley. After Turley returned to Arizona in June, Hawk telephoned her and informed her that he and Weathers wanted her to relocate to Las Vegas, where Weathers had a residence, "[t]o set up an office and start selling" X52 to entities with large fleets of vehicles. (Tr. 71). Turley therefore drove to Las Vegas, arriving on July 4, 2007. Hawk or Weathers then wired $5,000.00 to Turley for rent.[1] Weathers signed the lease on Turley's residence and provided Turley with a cell phone and arranged for utility service.

Turley spent the next three weeks meeting with representatives from several companies and "pitching the product . . . ." (Tr. 75). She, however, did not make any sales.

Approximately two weeks after Turley arrived in Las Vegas, Weathers came to the house and stayed for about one week. According to Turley's testimony, the day after Weathers left Las Vegas, "the cell phones were shut off, and the cable was shut off, and a week after that, they came and picked up the company van and took that, and then all money supply was cut off." (Tr. 76).

---

[1] Turley testified that Hawk provided the money. Weathers testified that he did.

3

According to Turley, Weathers wired $100.00 to Turley approximately one month after terminating her. Shortly thereafter, Weathers arrived at the house, told Turley that he was evicting her and drove Turley to a used-car lot, where he paid $1,000.00 toward a vehicle for Turley. Weathers gave Turley an additional $120.00 before she left Las Vegas for Michigan, where she could stay with relatives.

On February 6, 2009, Turley filed a complaint against Hammond Lubricant Works, Inc.; Hawk, individually and as president of Hammond Lubricant Works, Inc.; and against Weathers. She alleged the following: Count 1, tortuous interference with a contractual relation against Hawk and Weathers; Count 2, tortuous interference with a business relation against Hawk and Weathers; Count 3, breach of contract against the defendants; Count 4, battery against Hawk; Count 5, assault against Hawk; Count 6, intentional infliction of emotional distress against Hawk and Weathers as "employees/agents of Defendant Hammond Lubricant Works, Inc."; Count 7, vicarious liability/respondeat superior; Count 8, negligent hiring, training, and supervision; and Count 9, sexual harassment against Hawk. (App. 61). Turley sought, among other things, lost wages.

On March 31, 2010, the trial court scheduled a three-day jury trial for the week of February 7, 2011, which, pursuant to the parties' agreement, it subsequently rescheduled for the week of June 6, 2011. In the meantime, on October 22, 2010, the trial court entered summary judgment in favor of Hammond Lubricant Works, Inc. and Hawk in his capacity as president, thereby dismissing Turley's action against Hammond Lubricant

4

Works, Inc. and Hawk, in his capacity as its president. Turley did not appeal the trial court's granting of summary judgment.

On May 16, 2011, Hawk and Weathers filed a motion for continuance, which the trial court denied following a hearing. Hawk and Weathers filed a second motion for continuance on June 6, 2011, the day of the trial, which the trial court denied.

The trial court held a jury trial on June 6, 2011. Turley testified that she entered into an employment contract with "International Petroleum and X52." (Tr. 85). She further testified that Weathers signed the contract on "behalf of X52[.]" (Tr. 91). Turley, however, did not seek to admit the purported contract into evidence, testifying that she no longer had it in her possession.

Both Hawk and Weathers denied that they entered into an employment contract with Turley. Weathers testified that Turley was an independent contractor.

At the close of the plaintiff's evidence, Hawk and Weathers moved for a directed verdict on all counts. The trial court granted the motion on Counts 2, 7, and 8 but denied it on the remaining counts. On the remaining counts, the jury returned a verdict in favor of Turley and against the defendants. The trial court entered a judgment in the amount of $8,500.00 against Hawk and a general judgment in the amount of $86,250.00 against Weathers.[2] Weathers filed a motion to correct error on July 6, 2011, arguing that the damage award was excessive. The trial court denied the motion.

Additional facts will be provided as necessary.

---

[2] Hawk is not participating in this appeal.

5

1.      Motions for a Continuance

Weathers asserts that the trial court abused its discretion in denying the motions to continue the trial.  We disagree.

Indiana Trial Rule 53.5 provides that "[u]pon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence."  Thus, "[a] trial court's decision to grant or deny a motion to continue a trial date is reviewed for an abuse of discretion, and there is a strong presumption the trial court properly exercised its discretion." *Gunashekar v. Grose*, 915 N.E.2d 953, 955 (Ind. 2009).

We will find an abuse of discretion in denying a motion for continuance only if the movant demonstrated good cause for granting the motion.  *Id*.  "However, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial."  *J.W.B. v. Review Bd. of Indiana Dep't of Workforce Dev.*, 952 N.E.2d 843, 846 (Ind. Ct. App. 2011).

Weathers argues that the trial court's refusal to continue the trial due to Turley's failure to provide her income tax returns prejudiced him because "[a]s this was a breach of contract/wage loss case, [Turley]'s work history is certainly relevant."  Weathers's Br. at 13-14.  He further argues that "the full tax returns themselves may have contained other information necessary and useful for impeachment purposes," and "prejudice is

established . . . by rendering the Court's orders as moot when dealing with one party as opposed to another party." Weathers's Br. at 14.

Here, Weathers sought Turley's income tax returns for the years 2005 through 2009. On April 7, 2011, Weathers filed a motion to compel discovery. On May 16, 2011, Weathers also filed a motion to continue the trial. The trial court held a hearing on Weathers's motions on May 19, 2011, after which it granted Weathers's motion to compel discovery and denied the motion for a continuance. On or about May 20, 2011, Turley provided Weathers with tax return transcripts for the years 2007 through 2009. She averred that she "did not have enough income in earlier years to file a tax return, so no tax transcript was available for 2005 and 2006."[3] (App. 134).

Weathers filed a second motion to continue the trial on June 6, 2011. He argued that Turley's actions "clearly demonstrate an attempt by her to conceal the contents of the full tax returns. This is despite the fact that part of the basis of her claim is loss of wages. The tax returns themselves are extremely relevant to the issues of lost wages." (App. 28). The trial court denied the motion. During the trial, the trial court entered into evidence copies of Turley's W2s for the years 2008 through 2010.

Although Turley maintained that she had entered into an employment contract with Weathers, she failed to produce the contract and did not present any evidence regarding whether the contract was for a term or indefinite period of employment. Under

---

[3] According to the IRS's website, a tax return transcript "shows most line items from [a] tax return (Form 1040, 1040A or 1040EZ) as it was originally filed, including any accompanying forms and schedules." *See* http://www.irs.gov/efile/article/0,,id=232219,00.html (last visited March 26, 2012).

Indiana's doctrine of employment-at-will, "[i]f the tenure of service cannot be determined from the terms of the contract, such contract is one at will, and may be terminated at any time at the election of either party." *Pepsi-Cola Gen. Bottlers, Inc. v. Woods*, 440 N.E.2d 696, 697 (Ind. Ct. App. 1982). Where an employment contract is for an indefinite period of time, the measure of recovery for breach of the at-will employment contract is too speculative and uncertain to afford any ascertainable recovery. *See Dep't of Natural Res. v. Evans*, 493 N.E.2d 1295, 1302 (Ind. Ct. App. 1986) (citing *Pepsi-Cola*, 440 N.E.2d at 699)). Accordingly, the employer may discharge the employee without incurring liability. *Id*.

In contrast, a term employment contract is enforceable. *Evans*, 493 N.E.2d at 1302. Where a term contract is breached, "the measure of damages for breach, generally, is the contract price for the unexpired term less what the employee has earned, or by reasonable diligence in mitigation of damages could have earned, in other employment since the discharge." *Id*. (emphasis added). "[T]he burden is upon the employer to show that the employee has failed to mitigate damages." *Salem Cmty. Sch. Corp. v. Richman*, 406 N.E.2d 269, 275 (Ind. Ct. App. 1980).

We cannot say that denying the motions to continue the trial, which Weathers sought because Turley failed to produce her income tax returns, prejudiced Weathers. If the contract were for an indefinite term, Weathers would not be subject to liability.

Furthermore, even assuming that Turley and Weathers entered into a term employment contract, her wages earned prior to September of 2007, the date of

8

termination, are irrelevant for the purposes of measuring Turley's lost wages. As to Turley's wages since her discharge, she provided copies of her W2s and tax return transcripts, which reflect her wages. We therefore cannot say that the lack of Turley's income tax returns prejudiced Weathers.

As to providing the income tax returns for impeachment purposes, Weathers only speculates that "much more information could have been discovered and likely would have caused more damage to her credibility" had he had the income tax returns. Weathers's Br. at 14. Given that Weathers extensively cross-examined Turley regarding her work history, we cannot say that the lack of income tax returns prejudiced him.

Weathers has failed to show that the denial of his motions for a continuance prejudiced him in any way. Accordingly, we find no abuse of discretion in denying the motions.

2. Exclusion of Evidence

Weathers next asserts that the trial court abused its discretion in excluding evidence that Turley had pleaded guilty to misdemeanor criminal trespass in Arizona in May of 2007. He maintains that "[t]he fact that [Turley] lied about the existence of the conviction in two depositions and in her interrogatory answers . . . should have been brought to the attention of the jury" as it goes to the issue of "the credibility of a party to litigation who was willing to lie in same litigation for monetary gain." Weathers's Br. at 15.

We apply an abuse of discretion standard when reviewing a trial court's decision to admit or exclude evidence. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable, probable, and actual deductions to be drawn therefrom.

*Brewer v. Indiana Alcohol & Tobacco Comm'n*, 954 N.E.2d 1023, 1026 (Ind. Ct. App. 2011) (internal citations omitted), *trans. denied*.

Erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Sibbing v. Cave*, 922 N.E.2d 594, 598 (Ind. 2010); *see also* T.R. 61 ("No error in . . . the exclusion of evidence . . . is ground for . . . reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court . . . must disregard any error . . . which does not affect the substantial rights of the parties.").

The record shows that during a deposition, when asked whether she had been convicted of any crime, Turley stated that she "had an incident in New Mexico." (App. 37). She testified that she believed she pleaded no contest but could not remember. During a subsequent deposition, Turley testified that the incident had happened in Arizona, not New Mexico. She denied any conviction arose out of the incident. As to the interrogatories, she denied having been convicted of a crime.

Indiana Evidence Rule 609(a) provides as follows:

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime . . . shall be admitted but only if the crime committed . . . is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, criminal confinement or perjury; or (2) a crime involving dishonesty or false statement.

10

Weathers does not argue that the crime of criminal trespass is encompassed by Evidence Rule 609 and therefore admissible under that rule. Rather, he argues that the trial court should have admitted evidence of Turley's plea agreement because she denied having <u>any</u> criminal convictions in her interrogatory and depositions. Thus, Weathers argues that the evidence should have been admitted for the purpose of impeaching Turley's testimony regarding her transactions with Weathers. *See* Weathers's Br. at 17, 24.

In this case, we need not address whether the trial court abused its discretion in excluding the evidence as any error was harmless. The record shows that Weathers extensively cross-examined Turley regarding her employment relationship with Weathers and the existence of the alleged contract. We cannot say that the error, if any, in refusing to admit evidence of Turley's conviction for a minor offense either related to a material matter or substantially affected Weathers's rights.[4]

3. Jury Instructions

Weathers maintains that the trial court improperly instructed the jury. Specifically, he contends that the trial court instructed the jury on multiple "contradictory

---

[4] Weathers also argues that the trial court abused its discretion in excluding from evidence "a document signed by [Turley] in other litigation," with which Weathers sought to impeach Turley "regarding falsehoods in her testimony." Weathers's Br. at 22. Weathers, however, waives this issue for failure to develop a cogent argument. *See Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.").

theories of recovery" and that the evidence did not support the instructions. Weathers's Br. at 25.

> [T]he manner of instructing the jury lies within the sound discretion of the trial court, whose ruling will not be reversed unless an instructional error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury. Additionally, the instruction must be a correct statement of the law, be applicable to the evidence adduced at trial, and be relevant to the issues that the jury must decide in reaching its verdict.

*Dutchmen Mfg., Inc. v. Reynolds*, 891 N.E.2d 1074, 1084-85 (Ind. Ct. App. 2008) (internal citations omitted), *trans. denied*.

Without objection, the trial court instructed the jury that "[a] contract is an agreement that arises from an offer made by one person or entity and acceptance of that offer by another person or entity." (App. 17). It further instructed the jury as follows:

> A breach of contract occurs when:
>
> (1) a party fails to perform all the duties he or it agreed to do; or
> (2) a party places himself or itself in such a position that it is beyond his or its power to perform the contract,

(app. 18); and

> To recover damages from Dexter Hawk and Ron Weathers, Jessica Turley must prove all of the following by the greater weight of the evidence:
>
> (1) The parties entered into a contract;
> (2) Jessica Turley performed her part of the contract;
> (3) Dexter Hawk and Ron Weathers failed to perform its [sic] part of the contract or performed in a defective manner;
> (4) Dexter Hawk and Ron Weathers' breach of contract damaged Jessica Turley;

12

> (5) The parties reasonably anticipated those damages when they entered into the contract; and
>
> (6) Dexter Hawk's and Ron Weathers' breach of contract was a responsible cause of those damages.

(App. 19).

Arguing that the foregoing instructions were "based on the theory that a contract did exist and was definite in its terms," (Weathers's br. at 25), Weathers asserts that the trial court erred when it also instructed the jury on breach of implied-in-fact contract and the doctrine of promissory estoppel. Specifically, the trial court instructed the jury as follows:

> Jessica Turley claims Dexter [H]awk and Ron Weathers owe her damages because their contract was "implied in law," even though they did not formally agree in writing or in speech.
>
> To prove an implied contract, Jessica Turley must prove all of the following by the greater weight of the evidence:
> (1) Jessica Turley provided something of value to Dexter Hawk and Ron Weathers;
> (2) at either the express or implied request of Dexter Hawk and Ron Weathers;
> (3) under circumstances where fairness requires that Jessica Turley be compensated; and
> (4) compensation is necessary to prevent Dexter Hawk and Ron Weathers from being unjustly enriched at Jessica Turley's expense,

(app. 20); and

> If Jessica Turley proves all of the following by the greater weight of the evidence:
> (1) Dexter Hawk and Ron Weathers made a definite and substantial promise, expecting Jessica Turley to rely on it;
> (2) Jessica Turley reasonably relied on their promise;
> (3) Jessica Turley was harmed as a result; and

13

(4)     Fairness requires that Dexter Hawk's and Ron Weathers' promise be enforced, then Dexter Hawk and Ron Weathers are bound by that promise.

(App. 21). Again, Weathers's contention is that the jury instructions could have misled the jury and are inconsistent with the evidence presented where Turley "testified that there was a firm contract that had definite terms," and she "did not present any evidence on the theory of [p]romissory [e]stoppel."[5] Weathers's Br. at 25.

a. *Misleading instructions*

As to whether the instructions confused the jury, there is nothing in the record, and Weathers presents no evidence, that the instructions confused or misled the jury. We therefore find no abuse of discretion in instruction the jury on that basis. *See, e.g.*, *Tuthill Corp., Fill-Rite Div. v. Wolfe*, 451 N.E.2d 72, 78 (Ind. Ct. App. 1983) (finding no abuse of discretion in instructing the jury regarding many theories of recovery where "nothing indicates the jury was confused by these instructions").

Weathers further argues that the trial court should have "issued an instruction informing the jury that it may only consider one of the alternative theories of liability. By doing so, the jury could have considered each claim separately instead of considering all of the claims together." Weathers's Br. at 26-27.

We acknowledge that

"[t]he existence of express terms in a valid contract precludes the substitution of and the implication in law of terms regarding the subject

---

[5] Weathers concedes that the instructions are correct statements of the law. *See* Weathers's Reply Br. at 8.

14

matter covered by the express terms of the contract." "When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law."

*Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009) (internal citations omitted), *reh'g denied*. The existence of a contract, in and of itself, however, does not preclude equitable relief which is not inconsistent with the contract. *Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011).

The record does not reveal that Weathers tendered an instruction that the jury may only consider one of the theories of liability, and Weathers does not claim that he did so. "The failure to tender an instruction that the jury may in writing is tantamount to the waiver of any alleged error attendant to the giving of the instruction." *Cox v. State*, 475 N.E.2d 664, 666-67 (Ind. 1985).

b. *Applicable to the evidence*

Weathers further argues that the trial court abused its discretion in instructing the jury on breach of implied-in-fact contract and promissory estoppel because "the only evidence presented in this case was that of breach of a written contract." Weathers's Br. at 26. We cannot agree.

i. Implied-in-fact contract

Weathers seems to argue that because Turley alleged in her complaint that a written contract existed and testified that she entered into a written contract for employment, the trial court abused its discretion in instructing the jury on recovery based on an implied-in-fact contract.

15

> Where there is no express contract, the right to recover may rest upon an implied contract or an implied promise to pay. Such a contract may be inferred from the conduct, situation, or material relations of the parties and enforced by law. The intention to pay and the expectation of compensation may be inferred from the conduct of the parties and where equity, justice, and fair dealing require compensation.

*Money Store Inv. Corp. v. Summers*, 909 N.E.2d 450, 459 (Ind. Ct. App. 2009) (internal citations omitted), *reh'g denied*.

Here, Turley did testify that she had entered into a written contract; however, she testified that she entered into the written contract with "International Petroleum and X52." (Tr. 85). This testimony does not preclude recovery based on an implied-in-fact contract with <u>Weathers</u>. Thus, we cannot agree that the instruction is "contradictory to the evidence presented by Turley where she testified that there was a firm contract that had definite terms." Weathers's Br. at 25.

### ii. Promissory estoppel

Weathers contends that the trial court abused its discretion in instruction the jury on the doctrine of promissory estoppel because Turley "did not present any evidence on the theory of [p]romissory [e]stoppel." Weathers's Br. at 25.

> The doctrine of promissory estoppel provides that a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise." Promissory estoppel permits recovery where no contract in fact exists. The elements of promissory estoppel are: (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. An employee may invoke the doctrine

16

of promissory estoppel in certain instances.  To do so, the employee must assert and demonstrate that the employer made a promise to the employee, that the employee relied on that promise to his detriment, and that the promise otherwise fits within the Restatement test for promissory estoppel.

*Hinkel v. Sataria Distribution & Packaging, Inc.*, 920 N.E.2d 766, 771 (Ind. Ct. App. 2010) (internal citations omitted).

Here, Turley testified that Weathers promised her a sales position but required her to relocate to Las Vegas.  She further testified that, relying on Weathers's job offer, Turley rented a storage unit in Arizona for her belongings and moved to Las Vegas with her sons, where she rented a house.  After approximately two months, Weathers evicted her.

Stating that she "had nowhere to go at that time" because she gave up her lease in Arizona, Turley testified during the trial that she went to live with relatives in Michigan.  She also testified that she had to leave "[e]verything [she] owned" in Arizona because she "wasn't given the funds to pay for it or pick up anything."  (Tr. 78).  Given the testimony, we cannot agree that Turley failed to present any evidence to support an instruction on promissory estoppel.

4. Damages

Weathers next asserts that "Turley failed to produce any evidence in support of the damages awarded by this jury."  Weathers's Br. at 27.

> When reviewing a damage award, we consider only the evidence that supports the award along with the reasonable inferences therefrom.  A damage award will be upheld if it falls within the bounds of the evidence. "The jury has broad discretion in determining an award of damages, and

> when the evidence is conflicting, the jury is in the best position to assess the damages." "In other words, if the award is within the scope of the evidence and can be explained on any reasonable ground, the award will not be deemed the result of improper considerations."

*Newland Res., LLC v. Branham Corp.*, 918 N.E.2d 763, 771-72 (Ind. Ct. App. 2009) (internal citations omitted).

Turley testified that she entered into an employment contract with Weathers, whereby Weathers promised to pay her $1,000.00 per week plus commissions. Despite her assertions, Turley did not produce the contract, and she presented no testimony regarding whether the contract was for a specific term, and if so, the length of the term, or an indefinite term. Moreover, Turley testified that she did not sell any X52. Thus, we agree that the evidence does not support an award for future lost wages or earned sales commissions.

Turley, however, did testify that Weathers offered to pay her a salary of $1,000.00 per week and that she worked on behalf of Weathers's company for "[t]hree weeks," "before the door was closed . . . ." (Tr. 74). Turley did not receive any compensation for those three weeks. We therefore find that the evidence supports an award of $3,000.00 in wages.

As to Turley's claim that she is entitled to damages under the theory of promissory estoppel for the loss of her property, the evidence does not support an award under this claim. While an owner may testify as to the value of property, there must be a basis for

18

that valuation. *Court View Centre, L.L.C. v. Witt*, 753 N.E.2d 75, 82 (Ind. Ct. App. 2001); Ind. Evidence Rule 701.

Here, Turley testified that following termination of the commission sales agreement, she was without funds to pay the monthly storage costs thereby losing her possessions. Over objection from counsel, the trial court admitted Turley's list of possessions along with some amounts. The total amount of those items with an assigned value was approximately $36,000.00.

Turley, however, provided only the list of her lost property and no other factual basis for its value, including purchase prices. Moreover, the list contained items of sentimental value without monetary values assigned, including the ashes of Turley's deceased father, memorabilia and family photos. Thus, we find no basis for awarding Turley an award based on her loss of property.

Given the evidence presented, we hereby reverse the jury's award of $86,250.00 and remand with instructions that an award of damages in the amount of $3,000.00 be entered in favor of Turley and against Weathers.[6]

---

[6] We note that neither party sets forth an argument regarding Turley's claim for intentional infliction of emotional distress, the elements of which are that the defendant: (1) engaged in extreme and outrageous conduct (2) which intentionally or recklessly (3) caused (4) severe emotional distress to another. *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). The requirements to prove this tort are rigorous, and liability will be found "'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Bradley v. Hall*, 720 N.E.2d 747, 753 (Ind. Ct. App. 1999)). Turley presented no evidence that Weathers's action rose to this level.

Affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J., and RILEY, J., concur.