MERS, APPELLEE AND CROSS-APPELLANT, *v.* DISPATCH PRINTING COMPANY, APPELLANT AND CROSS-APPELLEE, ET AL.

(No. 87AP-355—Decided January 12, 1988.)

*Thomas M. Tyack & Assoc., Mark A. Serrott* and *Margaret L. Blackmore,* for appellee and cross-appellant.

*Jones, Day, Reavis & Pogue, Mark S. Coco, Fordham E. Huffman, Robert M. Duncan* and *James M. Jones,* for appellant and cross-appellee.

McCORMAC, J. William Mers, plaintiff-appellee, brought a claim against his former employer, the Dis-

patch Printing Company, defendant-appellant, for damages from breach of contract. The jury returned a verdict in favor of plaintiff on both contract and promissory estoppel claims in the amount of $57,750. Defendant moved for judgment notwithstanding the verdict and, in the alternative, a new trial. The trial court reduced plaintiff's damage award on his contract claim to $50,000 and on his promissory estoppel claim to $11,953.50 and rendered judgment accordingly. Defendant appeals, asserting the following assignments of error:

"1. The trial court erred in denying the motions of The Dispatch Printing Company for directed verdict, judgment notwithstanding the verdict, and new trial on the issue of contract liability.

"2. The trial court erred in denying the motions of the Dispatch Printing Company for directed verdict, judgment notwithstanding the verdict, and new trial on the issue of promissory estoppel liability.

"3. The trial court erred in only partially granting the motion of The Dispatch Printing Company for judgment notwithstanding the verdict on the issue of damages with respect to appellee's contract and promissory estoppel claims and in excluding evidence concerning appellee's receipt of unemployment compensation.

"4. The Dispatch Printing Company is entitled to a new trial on all issues in light of appellee's attempt to shift the burden of proof by invocation of a wholly and applicable [*sic*, inapplicable] legal standard, the presumption of innocence, and the trial court's refusal to instruct the jury on the inapplicability of the standard to this case.

"5. The Dispatch Printing Company is entitled to a new trial on Mers' promissory estoppel claim in light of the trial court's failure to properly and fully instruct the jury with respect to the elements of promissory estoppel liability.

"6. The Dispatch Printing Company is entitled to a new trial on Mers' contract claim in light of the trial court's failure to properly and fully instruct the jury with respect to the elements of contract liability and applicable agency principles."

Plaintiff-appellee cross-appeals and raises three assignments of error:

"1. The trial court erred in granting defendant's motion for judgment notwithstanding the verdict by reducing plaintiff's jury verdict on the promissory estoppel claim.

"2. The trial court erred in sustaining defendant's motion in limine excluding testimony concerning the results of the polygraph examination taken by plaintiff.

"3. The trial court erred in granting defendant's motion to reduce plaintiff's verdict when the prayer in plaintiff's complaint requested damages to the date of trial."

Mers worked for the Dispatch Printing Company as a traveling sales representative commencing on January 1, 1979. Mers claimed he was given oral assurance by Walter Schwartz that as long as he did an average job he would not be fired. Schwartz was the previous traveling sales representative and trained Mers.

During the time Mers was employed as a sales representative, he won several awards and commendations. In one evaluation, Mers was described as the "best traveling sales representative in the department."

Prior to 1982, Mers received the Dispatch's employee handbook. The handbook included a disciplinary procedure section and a probationary section. There was also a section entitled "probationary period."

Mers was arrested on several serious criminal charges on April 20, 1982. He contacted the Dispatch about his

arrest. The Dispatch sent Mers a letter which said that Mers was suspended without pay pending disposition of his case. Mers called the Dispatch and asked it to clarify this letter. Riebock, the director of the Dispatch's Employee-Labor Relations Department, testified that he said, if the jury gives Mers "a clean bill of health, a clean slate," the Dispatch would reinstate him.

Thereafter, Mike McGarrity, Mers' supervisor, met with Mers to get help with paperwork from Mers' territory. McGarrity said that Mers helped him with mail from customers and gave him an update on Mers' territory. Mers also helped McGarrity with circulation in Jackson, Ohio.

There was conflicting evidence about the terms given by the Dispatch for Mers' reinstatement. Gerald Sunbury, Mers' criminal attorney, and Mers testified that Dispatch employees told them Mers would be reinstated if Mers' trial was "favorably resolved." In deposition, McGarrity stated it was possible that he told Mers he would be reinstated with back pay when the "trial comes out in your favor." At trial, Dispatch employees testified that Mers would be reinstated with back pay when he was found innocent.

The criminal trial resulted in a hung jury and the charges were subsequently dropped when the alleged victim chose not to prosecute the matter any further. Nevertheless, the Dispatch refused to reinstate Mers and subsequently terminated him.

Mers unsuccessfully looked for another job in Columbus before moving to Findlay. He was still unable to find work. From June 1982 to July 1983, Mers attended college full time. He had intended to work full time while attending school full time, but he could not find a job. Mers had previously gone to school and worked full time in the early months of 1982.

In January 1985, Mers began a full-time job. After December 31, 1985, plaintiff made more at his current job than he would have made if he had stayed at the Dispatch.

In defendant's first assignment of error, the Dispatch argues that the trial court erred when it denied its motion for a directed verdict, a judgment notwithstanding the verdict, and a new trial on the contract liability issue.

The appellate standard of review for a directed verdict on an issue is whether reasonable minds can reach different conclusions on that issue. *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215, 58 O.O. 2d 424, 280 N.E. 2d 896. The standard for a judgment notwithstanding the verdict is the same as that for a directed verdict. *McNees* v. *Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269, 40 O.O. 318, 89 N.E. 2d 138.

The first issue is the terms of the employment contract between Mers and the Dispatch in regard to discharge. The next issue is whether the Dispatch's termination of Mers comported with the contract. If Mers' discharge did not comport with the terms of the contract, then the Dispatch breached it and has contract liability.

In order to address the first issue, we must decide the terms of Mers and the Dispatch's employment agreement. The Dispatch argues that Mers was hired as an employee-at-will whose employment could be terminated for any reason which is not contrary to law. The Dispatch further argues that there was no valid amendment to that agreement created by subsequent statements, as those in the employee handbook, because there was no acceptance and consideration.

*Helle* v. *Landmark, Inc.* (1984), 15 Ohio App. 3d 1, at 10-11, 15 OBR 22, at 31-32, 472 N.E. 2d 765, at 775, holds that an employer's unilateral offer precipitates the formation of a unilateral contract. The acceptance is effective

when the employee remains with the employer after learning of the employer's new policy. For purposes of consideration, the employee's retention of his position and continued performance of his work suffices to render the new condition enforceable.

Applying the reasoning in *Helle*, Mers accepted the Dispatch's offer contained in its employment handbook and in Schwartz's oral assurances and provided consideration when he continued working for the Dispatch after learning of the Dispatch's new policy. Thus, conditions for discharge became a part of Mers' employment contract.

Although an employment contract without any indication of tenure creates an employment-at-will, tenure rights may be indicated by "the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question. * * *" *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150, paragraph two of the syllabus.

"Employee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract." *Mers, supra,* at 104, 19 OBR at 264, 483 N.E. 2d at 154.

Mers introduced the Dispatch's employee handbook as evidence concerning the terms of his discharge. The employee handbook defines the status of different employees. "A full-status permanent employee is one who has successfully completed his/her probationary period and generally receives all company benefits." Every new employee is on probationary status for ninety calendar days in his initial position with the company. Under the section on probationary period, "probationary employees may be terminated at any time without prior notice." The handbook does not address the termination policy for a full-time employee. However, by its absence, it implies that a permanent employee will be given prior notice before being fired. Mers stated that, based on the handbook, he believed that he, as a permanent employee, could only be fired for just cause.

Mers claimed that the Dispatch's employee, Schwartz, gave oral assurances to Mers concerning the terms of his discharge. Schwartz told Mers that he would not be terminated in his position as a traveling sales representative unless he failed to perform satisfactorily.

Thus, there was sufficient evidence so that reasonable minds could reach different conclusions on whether Mers could only be discharged for just cause. This determination is consistent with the holding of the Supreme Court in *Mers, supra,* based upon the same evidence that there was a genuine issue of fact to be tried to a jury concerning the terms of the contract so that summary judgment was not applicable. In its answer to interrogatory number one, the jury found that there was an express or implied agreement that the Dispatch could not discharge Mers without just cause.

The second issue is whether there was just cause to fire Mers.

"Just cause" is defined in *Irvine* v. *Unemployment Comp. Bd. of Review* (1985), 19 Ohio St. 3d 15, 19 OBR 12, 482 N.E. 2d 587. In *Irvine*, an employee had quit her job. The court had to decide, for unemployment compensation purposes, whether the employee had quit without just cause. The court said:

"* * * [t]here is * * * not a slide-rule definition of just cause. Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent

person, is a justifiable reason for doing or not doing a particular act.'* * *

"* * *

"The determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case. * * *" *Id.* at 17, 19 OBR at 14, 482 N.E. 2d at 589.

The term "just cause" in the employment discharge situation herein has a similar meaning.

Mers had a good work record with the Dispatch before he was accused of a crime and indicted. The Dispatch properly suspended Mers but it promised to reinstate him under certain conditions. The conditions are disputed. Mers claims that the Dispatch agreed to reemploy him if the criminal charges were favorably resolved and there is substantial evidence in the record to support this version of the facts. The criminal trial resulted in a hung jury and the charge was dismissed when the alleged victim chose not to prosecute further.

After Mers was suspended, the Dispatch made an offer to reinstate Mers according to certain disputed conditions. After this offer, Mike McGarrity stated that he met with Mers to get help with paper work from Mers' territory. Mers helped McGarrity with mail from customers and gave McGarrity an update on his territory. Mers also helped McGarrity with circulation in Jackson, Ohio.

Mers showed his acceptance of the Dispatch's promise of reinstatement by working without pay; thus, there was consideration for the offer of the Dispatch. In summary, the jury could reasonably have found that the Dispatch fired Mers without just cause according to the terms of his contract as amended and modified by subsequent enforceable promises in breach of that contract.

For the reasons noted above, the trial court did not err when it refused to direct a verdict or grant a judgment notwithstanding the verdict for the Dispatch on Mers' claim of breach of contract.

Appellant's first assignment of error is overruled.

Appellant's second assignment of error is that the trial court erred when it denied its motion for a directed verdict, a judgment notwithstanding the verdict, and a new trial on the issue of promissory estoppel.

In *Mers, supra,* the court held that, where appropriate, the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements. The test formulated in *Mers* is whether "the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Id.* at 105, 19 OBR at 265, 483 N.E. 2d at 155.

Both parties agree that the Dispatch promised to reinstate Mers under certain conditions. Although the precise terms of reinstatement are disputed, there was substantial evidence that the Dispatch promised to reinstate Mers with back pay if his criminal case was favorably resolved. Sunbury, plaintiff's criminal attorney, testified that McGarrity told him that, to the best of his recollection, if the trial was favorably resolved, Mers would get his job back with back pay. McGarrity testified in his deposition that he told Mers that Mers would be "reinstated with back pay when the trial comes out in your favor." At the trial, McGarrity stated that he said this without the Dispatch's authorization. Mers testified that Meier and McGarrity told him that he would get his job back with back pay when the criminal case was favorably resolved.

Mers stated that he did not try to find another job because he relied on

the Dispatch's promise to reinstate him with back pay when the trial was favorably resolved.

Thus, there was evidence from which a reasonable jury member could find that the Dispatch made a promise to Mers which it should have reasonably expected him to rely upon and upon which he did rely to his detriment.

Defendant's second assignment of error is overruled.

Since the issues raised by defendant's third assignment of error and plaintiff's first and third assignments of error are interrelated, we will consider them together.

Defendant argues that the trial court erred when it only partially granted its motion for judgment notwithstanding the verdict on Mers' promissory estoppel and contract claims and in excluding evidence concerning Mers' receipt of unemployment compensation.

Under contract theory, the party whose rights are breached is entitled to be placed in the position he would have had if the contract had not been breached. These are his expectancy damages. *Yurchak* v. *Jack Boiman Constr. Co.* (1981), 3 Ohio App. 3d 15, 3 OBR 16, 443 N.E. 2d at 526.

As previously discussed, there was sufficient evidence to find that the Dispatch had breached its employment contract with Mers when it fired him after his criminal charges were dismissed.

The jury found that the Dispatch offered to reinstate Mers with back pay if his criminal trial was favorably resolved. Mers accepted this offer and gave adequate consideration when he worked, without pay, in his former territory and did not seek another job.

Therefore, the proper measure of damages is to put Mers in the position he would have had if those terms for reinstatement had been performed. Of course, reinstatement would also place him back under the contract where he could be discharged only for just cause.

The amount an employee receives in back pay is subject to reduction by the amount he earned or, in the exercise of due diligence, could have earned in appropriate employment during the period of exclusion. *State, ex rel. Guerrero,* v. *Ferguson* (1981), 68 Ohio St. 2d 6, 22 O.O. 3d 98, 427 N.E. 2d 515.

The jury found that Mers was available for work during the entire period between his suspension until December 1985 when he earned more than he would have earned at the Dispatch. He was available even while attending college full time. The jury's finding of fact will not be upset as long as there is competent, credible evidence to support it. *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578.

Mers stated that he had initially planned to go to college full time and work full time as he had in the early months of 1982. However, he was unable to find a job. He claimed that he did not look for work while attending college in 1983-1984 because it would be fruitless. No other witness testified about Mers' ability to work while he attended college at Bowling Green full time in 1983-1984. The burden of proof of mitigation of damages is placed upon the defendant. *State, ex rel. Martin,* v. *Columbus* (1979), 58 Ohio St. 2d 261, 12 O.O. 3d 268, 389 N.E. 2d 1123.

There was competent, credible evidence to support the jury's finding that Mers was available to work while attending college. Therefore, the calculation of the back pay that the Dispatch owes Mers should include the period when Mers attended college at Bowling Green.

Mers' back pay should be calculated from his exclusion from his job with the Dispatch in April 1982 (since there was a promise of back pay) until he received a comparable job in December 1985. Taking into consideration the

wages he would have earned between 1982 and 1985 and subtracting them from the wages he would have earned if he had remained at the Dispatch, plus the value of the health benefits Mers would have received, the jury verdict of $57,750 for lost wages on the contract claim is reasonable and supported by the evidence.

Defendant argues that the trial court erred when it excluded evidence of Mers' receipt of unemployment compensation from the record. In *State, ex rel. Guerrero,* v. *Ferguson, supra,* the court found that a fired state employee's unemployment compensation benefit should be deducted from the amount the state owes the employee in back pay because "the state cannot be required to pay twice." *Id.* at 7, 22 O.O. 3d at 98-99, 427 N.E. 2d at 516. The state had paid the employee's back pay while the employee received unemployment compensation benefits from the state unemployment fund. The issue here is whether the same rule applies to a private employer. Although we have previously held that it does not in an unreported opinion, *Cooper* v. *American Postal Workers Union* (Mar. 11, 1986), Franklin App. No. 85AP-404, unreported, we believe that the better reasoning is that the same rule should apply to both private and public employees. A private employer pays into the fund based upon its experience and is thus affected twice. Moreover, in both instances, the employee is placed in the same position by subtracting the unemployment benefits. The jury should have been instructed to subtract the unemployment benefits which were proffered in the amount of $4,656. Thus, the damage award of $57,750 should be reduced by $4,656.

Defendant's third assignment of error is partly sustained and partly overruled.

Mers first argues that the trial court erred when it limited the jury's damage award on the promissory estoppel claim to $11,953.50.

A trial court may reduce a jury damage award only if it appears to be awarded as a result of passion or prejudice, or is manifestly against the weight of the evidence. *Toledo, Columbus & Ohio River RR. Co.* v. *Miller* (1923), 108 Ohio St. 388, 140 N.E. 617, paragraph three of the syllabus.

The trial judge instructed the jury that promissory estoppel damages should put Mers in the position he would have been in if the promise to rehire Mers had been fulfilled. These are Mers' expectancy damages. The jury granted Mers $57,750 for the promissory estoppel claim. This is the amount of pay Mers would have received from the Dispatch, minus any amount earned in the interim, until he found a comparable job. (As previously noted, $4,656 for unemployment benefits should also have been subtracted.)

A damage award in a promissory estoppel claim can be based upon either reliance damages or expectancy damages. 1A Corbin, Corbin on Contracts (1963) 221, Section 200. The remedy should depend on what justice requires in a particular case. Factors to be considered are the definiteness in measuring the damages caused by the reliance and whether the promise relied upon obligates the promisor into the future. 1A Corbin, Corbin on Contracts (1963) 221, Section 200, 240-241, Section 205.

Ohio law is sparse on the damages allowed in a promissory estoppel claim. In *McIntosh* v. *Micheli Restaurant, Inc.* (1984), 22 Ohio Misc. 2d 5, 22 OBR 118, 488 N.E. 2d 1261, plaintiff was awarded his expectancy damages on a promissory estoppel claim. In *Blackwell* v. *Internatl. Union, U.A.W.* (1983), 9 Ohio App. 3d 179, 9 OBR 289, 458 N.E. 2d 1272, an employee-pension action, the plaintiff was awarded his expectancy damages, which were his pension.

In *Pepsi-Cola General Bottlers, Inc.* v. *Woods* (Ind. App. 1982), 440 N.E. 2d 696, the court held that an employee who quit her job on the promise of a new job was granted neither reliance nor expectancy damages when the new employer refused to hire her. In *Hunter* v. *Hayes* (Colo. App. 1975), 533 P. 2d 952, an employee who quit her job on a promise of another job, which was terminable-at-will, was granted reliance damages when the prospective employer refused to hire her. See, also, *Grouse* v. *Group Health Plan, Inc.* (Minn. 1981), 306 N.W. 2d 114.

The employees in the preceding three cases had never worked at the job promised them and would have worked under a terminable employee-at-will agreement. However, in this case, Mers could not be immediately terminated because of the employment contract agreement limiting his discharge. Mers had a very good work record at the Dispatch and had already worked in the traveling sales representative position. Therefore, calculating damages based on the value of the pay that Mers expected to receive from the Dispatch is more definite and just than calculating damages from the value of pay from a promised job which has no job security.

The jury's award of damages based on expectancy was neither a result of passion or prejudice nor manifestly against the weight of the evidence. The damage award gave Mers the value of the promised performance, which was back pay plus health benefits, until Mers obtained a comparable job.

Therefore, the trial court erred when it reduced Mers' promissory estoppel claim to $11,953.50, which was plaintiff's reliance damages. Plaintiff's first assignment of error is sustained.

In plaintiff's third assignment of error, Mers argues that the trial court erred when it reduced Mers' damage award to $50,000 because of the provisions of Civ. R. 54(C).

Mers, in his complaint, asked for $50,000 in compensatory damages and $100,000 in punitive damages. The jury granted $57,750 in compensatory damages. The trial court limited the jury's award to $50,000 based on Civ. R. 54(C).

Civ. R. 54(C) states:
"* * * [E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled; however, a demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand * * *."

In *Bishop* v. *Grdina* (1985), 20 Ohio St. 3d 26, 20 OBR 213, 485 N.E. 2d 704, the court found in a contract action that a party's damage award was limited to the total amount the party had pleaded. The court said that the policy of Civ. R. 54(C) is to put the defendant on notice prior to trial as to its potential total liability. It forces the plaintiff to determine the approximate amount of total damages prior to trial. The court, in *Bishop,* interpreted Civ. R. 54(C) to mean that a party could be awarded punitive damages, even if not requested, as long as the total amount of the judgment was limited to the total damage amount requested in the complaint. Therefore, an award of damages does not have to follow the breakdown pleaded in the complaint as long as the award does not exceed the total damages asked in the complaint.

Mers requested a total damage award of $150,000—$50,000 in compensatory damages and $100,000 in punitive damages. The jury awarded Mers $57,750 in compensatory damages. Since $57,750 does not exceed the $150,000 Mers requested, the jury award complies with Civ. R. 54(C) as

interpreted in *Bishop* and cannot be reduced for this reason.

Plaintiff's third assignment of error is sustained.

In defendant's fourth assignment of error, the Dispatch argues that a new trial should have been granted. The Dispatch claims Mers tried to shift the burden of proof by the use of the term "presumption of innocence" and that the trial court erroneously refused to instruct the jury on the inapplicability of this standard.

According to the record, Mers' counsel used the term "presumption of innocence" in discussing Mers' criminal trial. His questions and statements about the presumption of innocence focused on whether the result of Mers' criminal trial fulfilled the condition defendant had established for reinstatement of Mers to his former position.

Mers and the Dispatch, in their opening statements, both stated that Mers had the burden of proof in this case. Mers' counsel, in his closing statement, argued that Mers was presumed innocent of his criminal charges. In *Drake* v. *Caterpillar Tractor Co.* (1984), 15 Ohio St. 3d 346, 15 OBR 468, 474 N.E. 2d 291, the court granted a new trial when the attorney, in his closing argument, included evidence the judge had ruled should be excluded. However, since the judge in the case at bar did not exclude the term "presumption of innocence," *Drake* does not apply.

The Dispatch, in its closing argument, said that the presumption of innocence standard has no applicability in this civil case. It explained that this standard applies only to a criminal case. The judge instructed the jury that the burden of proof was on the plaintiff who had to prove his case by a preponderance of the evidence.

The general charge of the judge was correct and enabled the jury to apply the law to the facts and render a verdict. For the court to instruct in such specific items might have unduly emphasized those elements at the expense of other evidence presented to the jury. *Cleveland Elec. Illum. Co.* v. *Astorhurst Land Co.* (1985), 18 Ohio St. 3d 268, 272-273, 18 OBR 322, 325-326, 480 N.E. 2d 794, 798.

Therefore, the trial court did not abuse its discretion when it denied the Dispatch's motion for a new trial on the issue regarding the presumption of innocence, particularly since the jury found, in their answer to interrogatory six, that the promise of the Dispatch was to reinstate Mers upon a "favorable resolution" of his criminal case rather than upon being found "innocent."

Defendant's fourth assignment of error is overruled.

Since defendant's fifth and sixth assignments of error both address the issue of the adequacy of particular jury instructions, they will be considered together. The Dispatch argues that the trial court did not properly and fully instruct the jury on the elements of promissory estoppel, contract liability, and applicable agency principles.

Civ. R. 51(A) states:

"A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. * * *"

In *Presley* v. *Norwood* (1973), 36 Ohio St. 2d 29, 65 O.O. 2d 129, 303 N.E. 2d 81, the court created an exception to the necessity of a specific objection to a jury instruction before the jury retires where the record affirmatively shows that the trial court has been fully apprised of the correct law governing a material issue in dispute. The complaining party must have unsuccessfully requested the inclusion of

that law in the trial court's charge to the jury. Then that party cannot be said to have waived his objections to the court's charge by failing to formally object after the charge is given.

The Dispatch did not specifically object to the jury instructions about promissory estoppel, contract liability, or agency principles. The jury instruction given on promissory estoppel by the judge is in the exact wording approved by the Supreme Court in *Mers, supra*. Therefore, the *Presley* exception does not apply. Since the Dispatch did not specifically object to the instruction on promissory estoppel, the Dispatch is foreclosed from raising it now.

The judge gave no jury instruction on agency principles. The issue of agency in this case involves the Dispatch's responsibility for statements made to Mers by Schwartz. However, agency was not a material issue in the dispute and not applicable at all to the promissory estoppel claim. There was other sufficient evidence to find a just cause provision in the plaintiff's employment contract without Schwartz's alleged statement. Therefore, the *Presley* exception does not apply to the agency issue, since the requested pre-argument instruction was general only and no specific objection was made at the close of the argument. The Dispatch is foreclosed from raising this specific objection now.

The judge instructed the jury that there was an oral employment contract between the Dispatch and Mers. The jury was to determine the terms. Defendant's requested jury instruction on the contract issue did not fully state the law developed in *Mers* on that issue. Therefore, the *Presley* exception to the requirement of specific objections to a jury instruction does not apply to the issue of contract liability.

For these reasons, this court finds the trial court did not err in instructing the jury on the aforementioned issues. Defendant's fifth and sixth assignments of error are overruled.

Mers, in his second assignment of error on cross-appeal, argues that the trial court erred in excluding the results of Mers' polygraph examination.

In *State* v. *Souel* (1978), 53 Ohio St. 2d 123, 7 O.O. 3d 207, 372 N.E. 2d 1318, the results of the defendant's polygraph examinations were only admissible for corroboration and impeachment purposes in a criminal case. The prosecuting attorney, the defendant, and defense counsel had to sign a written stipulation that the defendant submitted to the examination and that the results could be subsequently admitted at trial. Notwithstanding the stipulation, the admissibility of the polygraph test was at the judge's discretion. The factors for the judge in considering admissibility were the examiner's qualifications and conditions during the test.

An insurance company tried to admit its claimant's polygraph examination in a civil trial. This court held, "[w]here an insured claims bad faith and the lack of a basis for rejecting coverage by an insurer, the results of a polygraph examination of the insured, taken with his consent, are admissible with the proper cautionary instruction as proof of a basis to reject coverage." *Moss* v. *Nationwide Mut. Ins. Co.* (1985), 24 Ohio App. 3d 145, 24 OBR 234, 493 N.E. 2d 969, paragraph one of the syllabus. The court carefully limited the holding to the facts of the case.

Later in the year that *Moss* was decided, the Ohio Supreme Court in a civil case excluded polygraph test results. It said, "[a]bsent an agreement between the parties polygraph tests are not a generally accepted

method of proof." In *Brown* v. *Best Products Co.* (1985), 18 Ohio St. 3d 32, 35, 18 OBR 69, 72-73, 479 N.E. 2d 852, 856, the prejudicial impact of the polygraph test on the jury was held not to outweigh its probative value.

Thus, a stipulation between parties before a polygraph examination is taken is generally necessary to make the results of the examination admissible in court in a civil case.

Mers voluntarily took a polygraph examination without written stipulation. According to plaintiff's exhibit of plaintiff's test results, Mers denied knowledge or complicity in the rape of which he was accused. The examiner said Mers had "definite indications of truthfulness." However, the examiner no longer had the data upon which he had based his assessment.

Based on these facts, the test results were inadmissible because there was no stipulation and the prejudicial impact it would have on the jury far outweighed its probative value.

Plaintiff's second cross-assignment of error is overruled.

Defendant's first, second, fourth, fifth and sixth assignments of error are overruled. Defendant's third assignment of error is partly sustained and partly overruled. Plaintiff's first and third assignments of error are sustained. Plaintiff's second assignment of error is overruled.

The judgment of the trial court is reversed. The case is remanded to the trial court to revise the judgment for plaintiff to the amount of $53,094 based both on the theories of breach of contract and promissory estoppel.

*Judgment reversed and case remanded with instructions.*

BOWMAN and BRYANT, JJ., concur.