**Wallace v. Gray Drug, Inc.**
*[Cite as 5 AOA 163]*

*Case No. 57031*
*Cuyahoga County, (8th)*
*Decided August 23, 1990*

*Thomas L. Meros, Attorney at Law, 736 Standard Building, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*G. Michael Curtin, Attorney at Law, 330 Hanna Building, Cleveland, Ohio 44115, for Defendant-Appellant.*

*Dorrit W. Purdy, Attorney at Law, 55 Public Square, #2120, Cleveland, Ohio 44113, for Defendant-Appellant.*

PRYATEL, J.

In a timely appeal, Gray Drug, Inc. ("defendant") challenges a jury verdict rendered May 25, 1988 for plaintiff James Wallace ("employee") in the amount of fifty thousand dollars damages in his claim for breach of an implied employment contract based upon promissory estoppel and his wrongful discharge.

An App. R. 9(C) approved statement of facts constitutes the record on appeal indicating as follows:

"Undisputed evidence disclosed at trial that plaintiff worked from 1972 to 1980 in defendant's sign shop as a union employee. George Sertick, a management employee for defendant, testified he persuaded plaintiff, who was hesitant at first, to forego his union position and enter defendant's management training program in 1980. Sertick also testified he told plaintiff working in management offered 'continuous service' for a 'long, long time.' Plaintiff testified the promise of "real money," benefits, and retirement was made to him by Sertick inducing him to leave his union job."

Plaintiff acknowledged he had no written employment contract, nor could plaintiff recall any promise from defendant or its representative to employ him for a specific length of time. Plaintiff entered management training and gave up the union job at about the same pay level in 1980. Plaintiff, thereafter, was promoted to store manager of Store No. 91, defendant's Strongsville store, in the summer of 1982.

On a Friday in October, 1985, at about 2:30 p.m., plaintiff was preparing to take a sum of money to the bank for deposit when he was momentarily distracted by the store's ringing buzzer. After investigating the buzzer, plaintiff returned to the safe and found a loss of four thousand dollars, which he reported to the Strongsville police and his manager, Thomas McWilliams.

Plaintiff testified he was terminated by defendant on November 6, 1985. Plaintiff took a lie detector test and was never charged with any wrongdoing.

Thomas Mcwilliams, plaintiff's supervisor, worked for defendant for twenty-five years and testified plaintiff was terminated for two reasons:

"(1) the loss of four thousand dollars attributable to the use of an improper procedure called "day-lock" on the safe, and

"(2) the fraudulent misuse of manufacturer's coupons to ostensibly increase the store's reported income. McWilliams further testified he counselled plaintiff regarding the improper use of coupons in 1984 and 1985."

In addition, McWilliams stated the defendant's procedure manual absolutely prohibited the day-lock procedure.

In using the day-lock system, a safe with a combination lock would have all the numbers dialed with the exception of the last digit; the dial would be turned three quarters of the way to the last number, and the handle or lock bar of the safe would be pulled down into the open

position. This procedure made access to the safe faster in order to take out lottery tickets and cash kept in the safe.

Plaintiff's witnesses, Darren Twedell and John Linder, both of whom were also employed as managers for defendant, testified they had used the day-lock safe system themselves since it was a shortcut. Twedell testified the Euclid Avenue store where 'he employed day-lock was directly below corporate headquarters, and he was never warned or disciplined for its use. Linder acknowledged day-lock was against company policy, but testified many of defendant's policies were not followed in actual practice.

Twedell, who testified he was trained by the same staff as plaintiff, stated he was told when he was trained to use coupons to make up shortages; whereas, Linder testified coupons were only to be used in conjunction with an actual customer purchase.

The trial court directed a verdict on two issues:

"(1) the court ruled there was no evidence of any employment contract between the parties in 1972; and

"(2) the trial court ruled there was no express contract for a definite period of time."

Plaintiff was permitted to amend his complaint to claim promissory estoppel in switching employment in 1980 and, therefore, argue whether he was terminated for just cause.

Detective Hall of the Strongsville Police Department testified he drove plaintiff to and from the administration of a lie detector test, during which time plaintiff admitted coupon use to make up shortages, and testified it was company policy to keep the safe locked. Defendant's regional loss prevention supervisor, John Zippay, testified:

"(1) he investigated plaintiff's use of coupons;

"(2) plaintiff told him he placed twenty dollars a week into cash registers for over two years; and

"(3) other employees of defendant had been terminated for similar behavior."

Plaintiff testified his damages in salary loss in 1985 to 1987 amounted to at least $46,750. The jury returned a verdict for plaintiff of fifty thousand dollars. Defendant's motion for judgment notwithstanding the verdict or, in the alternative, for new trial was denied, from which defendant appeals, assigning four errors:

"I. THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.

"II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO GRANT DEFENDANT'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF THE PLAINTIFF'S CASE AND ALL THE EVIDENCE.

"III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO GRANT DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR MOTION FOR A NEW TRIAL.

"IV. THE AMOUNT OF THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

Defendant's assignments of error stem from the same issues, requiring a review of the entire record. Defendant argues the trial court erred in failing to grant a Civ. R. 50(A) directed verdict or Civ. R. 50(B) motion for judgment notwithstanding the verdict or, in the alternative, for a new trial for the following reasons:

"(1) plaintiff, James Wallace, was an at-will employee;

"(2) plaintiff presented no evidence to demonstrate any implied contract pursuant to the theory of promissory estoppel;

"(3) plaintiff's verdict for fifty thousand dollars against defendants was against the manifest weight of the evidence; and

"(4) defendant was entitled to judgment as a matter of law or, in the alternative, for a new trial."

Defendant's fourth assignment of error in which he disputes plaintiff's award of damages in the amount of $50,000 has merit and is therefore, modified herein. Defendant's other assigned errors lack merit.

Civ. R. 50(A) (4) provides as follows:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In *Ruta v. Breckenridge-Remy Co.* (1982), 69 Ohio St. 2d 66, 68, the court stated:

"When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This *** assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence." *Brandenburger v. Hilti. Inc.* (1989), 52 Ohio App. 3d 21.

After attacking the sufficiency of the evidence, defendant argues the jury verdict was against the manifest weight of the evidence. The trial court's denial of the judgment notwithstanding the verdict[1] or, in the alternative, for a new trial[2] was within the sound discretion of the trial court. *Highfleld v. Christian Academy* (1987), 34 Ohio App. 3d 311, 315. The domain of the jury is to weigh evidence and assess the credibility of witnesses. *Hollenbeck v. McMahon* (1875), 28 Ohio St. 1, at 9.

Judgments supported by some competent, credible evidence going to all essential elements of the 'case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St. 3d 77; *C. E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279, syllabus; *Feldman v. Loeb* (1987), 37 Ohio App. 3d 188.

The trial court need not grant a motion for a new trial and does not abuse its discretion in refusing to do so unless, upon the claim that the verdict is against the manifest weight, it appears to the trial court a manifest injustice has been done. *Rohde v. Farmer* (1970), 23 Ohio St. 2d 82.

In ruling on a Civ. R. 50(B) motion for judgment notwithstanding the verdict, the evidence presented at trial is construed most strongly in favor of the party opposing the motion and "where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied." *Osler v. Lorain* (1986), 28 Ohio St. 3d 345, quoting *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275. When construing a motion for judgment notwithstanding the verdict, the court must weigh neither the verdict nor the credibility of witnesses. *Id.*

The same standard governs both directed verdict and judgment notwithstanding the verdict motions although a directed verdict motion made at the close of plaintiff's evidence is evaluated on the evidence of the plaintiff's case in chief, while a judgment notwithstanding the verdict motion is evaluated on all the evidence presented at trial. *Chemical Bank v. Neman* (1990), 52 Ohio St. 2d 204, 206-207.

In the motion for new trial, defendant attacks the manifest weight of the evidence. In ruling on the new trial motion pursuant to Civ. R. 59(A) (6), the trial court must review the evidence at trial and pass on the credibility of the witnesses. *Rohde v. Farmer, supra,* at paragraph 3 of the syllabus.

The review of the trial court is not unlimited; however, the trial court is given wide latitude to review the weight of the evidence and credibility of the witnesses to find only "whether it appears to the trial court that manifest injustice has been done." *Id.; Osler, supra,* at 351.

Defendant argues plaintiff was employed on an at-will basis. Defendant argues the trial court erred in failing to direct a verdict for defendant at the close of plaintiff's case in chief since plaintiff had no oral implied contract based upon promissory estoppel and was discharged for just cause. Defendant's argument is unpersuasive.

The law of Ohio is well documented in support of the principle that employment is presumed to be at-will unless other contractual provisions expressly or impliedly prove otherwise. *Phung v. Waste Management, Inc.* (1986), 23 Ohio St. 3d 100; *Evely v. Carlton* (1983), 4 Ohio St. 3d 163; *Fawcett v. G. C. Murphy & Co.*(1976), 46 Ohio St. 2d 245; *Henkel v. Educational Research Council* (1976), 45 Ohio St. 2d 249.

"Unless otherwise agreed, either party to an oral employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law." *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, at syllabus 1.

Ohio has historically held at-will employment contracts may be terminated for any reason at any time whatsoever, even if done in gross or reckless disregard for an employee's rights. *Phung, supra; Brandenburg, supra.*

In *Mers,* however, the Ohio Supreme Court carved two narrow exceptions to the at-will employment doctrine. These two exceptions involve the doctrine of promissory estoppel and implied contract which modify original at-will contracts. *Mers, supra,* The doctrine of promissory estoppel may apply in situations otherwise presenting a case of employment at-will:

"*** [T)he test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Id.*, at paragraph 3 of syllabus. See also, *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App. 3d 268.

Therefore, any representation by an employer which gives rise to obligations beyond those present in an employment at-will contract are to "be viewed in reference to their reasonable effect on the employee." *Kelly v. Georgia Pacific Corp.* (1989), 46 Ohio St. 3d 134, 139. In Kelly, the employee alleged his employer made oral representations to him that led him to conclude he would enjoy continued employment. *Id.* The court held the reasonableness of the employee's reliance on such assurances was a question of fact for the jury. *Id.*, at 140. Likewise in *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St. 3d 131, the court held summary judgment was not proper since the reasonableness of an employee's reliance on representations of an employer's executives is a jury question. Accord, *Blatnicky v. Sheller-Globe Corporation* (May 17, 1990), Cuyahoga App. No. 56696, unreported; *Williams v. Cap Gemini America* (Jan. 25, 1990), Cuyahoga App. No. 56498, unreported.

Defendant argues there was no implied contract between the parties based upon promissory estoppel and their oral representations to plaintiff or otherwise.

Plaintiff testified he worked for defendant as a union employee in the sign shop from 1972 until 1980. In 1980, Sertick, who worked as regional director for defendant, told plaintiff orally that he could, in a "short time," manage one of defendant's superstores and that "real money" could be made in management. Sertick testified he spoke to plaintiff, encouraged him to give up his union job, and represented to plaintiff that management offered "continuous service" in which plaintiff could benefit and be employed for a "long, long time."

Construing these statements and plaintiff a reliance upon them most strongly in plaintiff's favor as required by Civ. R. 50(A) (4) and 50(B), we must assume plaintiff established an implied contract of employment between himself and defendant since each element of promissory estoppel was met. Cf. *Ganim v. Brown Derby, Inc.* (Mar. 15, 1990), Cuyahoga App. No. 56644, unreported, (holding summary judgment inappropriate and submission to a jury necessary when oral assurances comprising possible promissory estoppel have been made to an employee). Hence, defendant was not entitled to a directed verdict or judgment notwithstanding the verdict since reasonable minds could reach different conclusions based upon the evidence presented. *Ruta v. Breckenridge-Remy, supra.*

Plaintiff's reasonable and foreseeable reliance on assurances that his employment in management was for a long term and thus plaintiff's detrimental relinquishment of his union employment in lieu of management was an issue for the jury. Therefore, the jury could find all the elements of promissory estoppel since the employer should have reasonably expected the oral representations of Sertick to be relied upon by the plaintiff and induce plaintiff's action to quit his union job for the long term security plaintiff expected a management position to offer him. Thus, plaintiff could only be discharged for just cause. *Kelly, supra; Helmick, supra; Mers, supra.*

Reviewing the entire record in the case *sub judice* reveals evidence that the jury verdict for plaintiff was not against the manifest weight of the evidence.

Defendant argues it had just cause to discharge plaintiff pursuant to two theories: "(1) plaintiff failed to lock the safe as prescribed, losing four thousand dollars; and (2) plaintiff misused coupons. Defendant's argument in unpersuasive."

"Just cause" is defined in *Irvine v. Unemployment Comp. Bd. of Review* (1985), 19 Ohio St. 3d 15, which states:

"*** [T)here is *** not a sliderule definition of just cause. Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. ***

"*** The determination of whether just cause exists necessarily depends upon the unique factual consideration of the particular case." *Id.*, at 17; *Mers v. Dispatch Printing Co.* (1988), 39 Ohio App. 3d 99, 102-103.

Plaintiff had worked as manager of defendant's Strongsville store from the summer of 1982 until his discharge in November, 1985. Plaintiff testified he used coupons as an acceptable practice to increase the store's income and that this practice was used at other stores. He also testified he was never warned about coupon use by management.

Plaintiff further acknowledged he used the day-lock system on the safe to increase efficiency and profit margin in keeping with the defendant's overall unwritten corporate policy called "WIT" (Whatever It Takes). Plaintiff testified he believed both these devices furthered defendant's economic interests.

Two of defendant's other store managers, Darren Twedell and John Linder, testified they also used the day-lock system to save time and had not been reprimanded by management. Furthermore, Twedell, who was trained by the same staff at the Shaker Heights store as plaintiff, testified he was told he could use coupons to make up shortages. Both Twedell and Linder testified it was common practice as managers to ignore many of defendant's express procedures in actual practice due to their impracticality and inefficiency.

Defendant presented the testimony of its loss prevention supervisor and pharmacy supervisor to substantiate the fact that plaintiff violated written procedures and was reprimanded. It is uncontroverted four thousand dollars was taken from the Strongsville store safe. Plaintiff took a lie detector test and was not charged with any wrongdoing. Thereafter, plaintiff was discharged.

Plaintiff, as a store manager for defendant, could have been doing his job in accord with accepted or tolerated management practices, as other managers testified, when his store was the target of a thief. In summary, the jury could reasonably have found that defendant fired plaintiff without just cause according to the terms of the implied contract as enforced by the doctrine of promissory estoppel.

A review of the entire record indicates the jury verdict was supported by some competent, credible evidence going to all the essential elements of the case and will not be reversed since it was not a manifest injustice or against the manifest weight of the evidence. *Seasons Coal Co., supra; C. E. Morris Co., supra.*

Defendant's last assignment of error alleges the jury miscalculated the amount of damages owed plaintiff from his wrongful discharge. Defendant's argument is well taken.

A damage award in a promissory estoppel claim can be based upon reliance or expectancy damages. 1A Corbin, Corbin on Contracts (1963), 221 Section 200; *Mers v. Dispatch Printing Co.* (1988), 39 Ohio App. 3d at 105.

The remedy is dependent on what justice requires. *Id.* The jury's finding of fact will not be upset as long as there is competent, credible evidence to support it. *C.E. Morris v. Foley, supra.*

Testimony at trial was introduced to indicate:

"(1) plaintiff lost seven weeks of wages in 1985 due to his termination at $450 per week = total $3,150;

"(2) plaintiff lost a three thousand dollar bonus to which he was entitled;

"(3) plaintiff suffered a $14,600 loss in salary in 1986 due to the difference in salary of his earnings with defendant minus what he actually earned; and

"(4) plaintiff lost corresponding income of $26,000 in 1987."

The total of all these figures is $46,750.

Calculating damages based upon the value of pay plaintiff expected to receive from defendant is definite and just. *Mers, supra,* at 106. The jury was instructed on the issue of damages at trial in part as follows:

"*** The measure of recovery in an action by an employee for wrongful discharge is the actual damages suffered by reason of the unlawful discharge."

However, the total damage award of fifty thousand dollars ($50,000) the jury awarded plaintiff exceeded bye $3,250 the actual damages of $46,750 plaintiff testified he sustained.

Therefore, the jury's award is modified to reflect the actual damages plaintiff sustained in the amount of $46,750. This cause is modified and as modified is affirmed.

It is ordered that appellee recover of appellant his costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PATTON, C.J., and MARTIN, J., concur.

---

[1] Civ. R. 50(B) states in part:

"Motion for judgment notwithstanding the verdict. Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has

been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.
***"

[2] Civ. R. 59 states in part:

"(A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds.

"***

"(6)The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

"(7)The judgment is contrary to law."

Judge August Pryatel, Retired, Eighth Appellate District and Judge William J. Martin, Carroll County Court of Common Pleas, Sitting by Assignment.