[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Statements made by Danielle Bailey after visiting with her parents on September 7, 1997, led plaintiff-appellee, Alice Hempen, Danielle's custodian, to believe that Danielle had been at her parents' home[1], and that inappropriate touching had occurred between her and her parents defendants-appellants Linda and Gordon Bailey. The next day Hempen filed an emergency motion to suspend visitation between the Baileys and Danielle. After extensive hearings and consideration of the Baileys' objections to the magistrate's decision, the trial court ultimately granted Hempen's motion. Bringing forth four assignments of error, Linda and Gordon Bailey now appeal the trial court's judgment suspending their visitation rights with their daughter based on the finding that inappropriate sexual activity had occurred between Danielle and themselves. For the following reasons, we affirm the judgment of the trial court.
We address the assignments out of order, as the last three assignments have a bearing on the outcome of the first. In the Baileys' second assignment of error, they maintain that the trial court committed plain error by admitting the out-of-court-statements of Danielle, then five years old, without first holding a hearing to determine her competency to testify truthfully and reliably, as required by Evid.R. 807, a hearsay exception for statements of purported sexual activity or abuse by a child twelve years or younger. Our review of the record demonstrates that the trial court did admit out-of-court-statements that Danielle had made to two Hamilton County Department of Human Services (HCDHS) sexual-abuse investigators and to Hempen regarding the inappropriate sexual behavior, albeit without objection by the Baileys' counsel. In fact, this evidence was first elicited by the Baileys' own counsel during cross-examination of Beth Caspeer, the supervisor of the Sexual Abuse Intervention Unit of HCDHS, in what appears to have been a debatably sound trial strategy of attempting to establish that HCDHS had not conducted a thorough investigation of the statements made by Danielle by neglecting to question her on the sequence of events preceding and following the alleged sexual activity.[2] Despite the fact that the Baileys' counsel may have been trying to expose a weakness in HCDHS's investigation of the allegations made by Danielle, he did "open the door" for subsequent testimony regarding those statements. The term "opening the door" is based upon the doctrine of "invited error," a corollary of the principle of equitable estoppel, which prohibits a party who induces error in the trial court from taking advantage of such an error on appeal.[3] Since the Baileys' counsel first sought the content of Danielle's statements concerning inappropriate sexual activity, the Baileys are now precluded from maintaining that the trial court committed error by allowing those statements in evidence during later testimony. Accordingly, the Baileys' second assignment of error is overruled.
In their third assignment of error, the Baileys contend that the trial court erred by not appointing a guardian ad litem for Danielle pursuant to R.C. 2151.281(B)(1), or, in the alternative, that the trial court abused its discretion in appointing a guardian late in the proceedings. R.C. 2151.218(B)(1) states that a "court should appoint a guardian adlitem to protect the interest of a child in any proceeding concerning an alleged abused or neglected child * * *." This statute, however, contemplates a scenario in which the county's children services board or another party files a complaint, separate from other proceedings, alleging abuse or neglect by a parent. Here, the issue of whether inappropriate sexual activity had occurred arose in the midst of a private custody proceeding, via a motion to suspend the parents' visitation rights. Additionally, the fact that charges of abuse have not been filed against a parent has been deemed a factor in determining that a particular proceeding is not an abuse or neglect proceeding under R.C. 2151.218(B)(1).[4] Therefore, as no charges were filed against Gordon or Linda Bailey, we conclude that the court was not required under R.C. 2151.218(B)(1) to appoint a guardian ad litem at the beginning of the hearings on the motion to suspend visitation. Further, we hold that the trial court did not abuse its discretion in appointing the guardian adlitem after the hearings had begun. Though the trial court made the appointment halfway through the hearings, pursuant to a motion by the Baileys' counsel, the magistrate did not recommend a ruling on the motion to suspend visitation until after she had read the recommendation and report of the guardian ad litem. Accordingly, we overrule the third assignment of error.
In their fourth assignment of error, the Baileys contend that the trial court erred in excluding evidence of their individual polygraph examinations. The Ohio Supreme Court has held that polygraph examinations are admissible in criminal cases for corroboration or impeachment provided, among other conditions, that both parties stipulate to the administration of the test and to its admissibility at trial.[5] These conditions have also been held applicable in civil cases.[6] Here, no stipulation existed between the parties regarding the use of the polygraph examinations taken by the Baileys. As this prerequisite for admissibility was not met, we conclude that the trial court did not abuse its discretion in excluding the results of Linda and Gordon Bailey's polygraph examinations. Thus, the fourth assignment of error is overruled.
Finally, in their first assignment of error, the Baileys maintain that the trial court abused its discretion in granting Hempen's motion to suspend visitation, specifically challenging the magistrate's finding that inappropriate sexual activity had occurred between themselves and Danielle on September 7, 1997, as against the manifest weight of the evidence. This court will not reverse the trial court's decision on the manifest weight of the evidence if there is relevant, competent and credible evidence supporting the decision.[7] Deference is given to the trial court's findings because it has the best opportunity to view the witnesses and to observe their demeanor, gestures and voice inflections, something that can not be easily conveyed to a reviewing court through the transcript, and then to use those observations in weighing the credibility of the proffered testimony.[8]
After a thorough review of the record, we conclude that the trial court did not abuse its discretion in granting the motion to suspend visitation, because there was competent, credible evidence, namely Danielle's firsthand reports of sexual abuse and the report from HCDHS finding that sexual abuse was "indicated," to support a finding that inappropriate sexual activity had occurred between Danielle and her parents. But we note that the magistrate, agreeing with Danielle's psychologist, also found that it would be "emotionally damaging" for Danielle never to have contact with her parents, and she therefore ordered, upon the suggestion of the guardian ad litem, that supervised visitation be slowly implemented between Danielle and the Baileys. Currently, the Baileys have visitation with Danielle several hours a week, supervised by an independent party. Accordingly, we conclude that the first assignment of error is not well taken and affirm the judgment of the trial court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Hildebrandt, P.J., Sundermann and Shannon, JJ.
[1] A standing court order prohibited the parents from taking Danielle to their home during visitation due to an earlier finding that the house was unsanitary.
[2] There was testimony indicating that questions aimed at eliciting specific details regarding the circumstances of the day, time and location surrounding alleged sexual abuse helped investigators to determine the veracity of a child's statements. Though the magistrate noted in her decision that the HCDHS investigators could have explored more specific details of the events surrounding the allegations of sexual abuse, the investigators were attempting to limit their "open" questions to the bare minimum in order to prevent the appearance that they were leading or encouraging Danielle to make such allegations.
[3] See Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co. (1986),28 Ohio St.3d 20, 502 N.E.2d 590; State v. Woodruff (1983),10 Ohio App.3d 326, 462 N.E.2d 457.
[4] See Truitt v. Truitt (Oct. 23, 1989), Preble App. No. CA89-02-006, unreported.
[5] See State v. Souel (1973), 53 Ohio St.2d 123, 372 N.E.2d 1318.
[6] See Zanesville v. Sheets (1987), 38 Ohio App.3d 24, 525 N.E.2d 842;St. Elizabeth's Employee Federal Credit Union v. Jarman (Mar. 26, 1999), Hamilton App. No. C-971039, unreported; Mers v. Dispatch Printing Co. (1988), 39 Ohio App.3d 99, 529 N.E.2d 958.
[7] Davis v. Flickinger (1997), 77 Ohio St.3d 415, 674 N.E.2d 1159.
[8] Id. at 418, 674 N.E.2d at 1162, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273,1276-1277.